Kevin J. IMEL, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A04–0412–PC–659.

Court of Appeals of Indiana.

July 1, 2005.

Transfer Denied Sept. 14, 2005.

Susan K. Carpenter, Public Defender of Indiana, Chris Hitz–Bradley, Deputy Public Defender, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellant-petitioner Kevin J. Imel appeals from the denial of his petition for post-conviction relief, claiming ineffective assistance of appellate counsel. Specifically, Imel argues that his appellate counsel was ineffective for failing to challenge both the trial court's and the State's references to him as a violent felon during trial, along with references to his prior conviction for burglary. Concluding that Imel has failed to show that his appellate counsel was ineffective on this basis, we affirm the judgment of the post-conviction court.

### FACTS

The facts of this case as reported in Imel's direct appeal are as follows:

[O]n February 20, 2001, the Allen County Sheriff's Department received a tip that Imel, who had an outstanding arrest warrant, was at his girlfriend's house. Officers discovered him on a bed in a bedroom, unclothed except for a pair of underwear. Imel was allowed to get dressed and pointed out the clothes he wanted to wear, including a sweatshirt in a pile of clothes next to the bed.

Officers found a handgun on top of the sweatshirt. Detective Michael Bennington obtained a statement from Imel that he had agreed to keep the gun overnight at a friend's request. On May 11, 2001, the State charged Imel, who had a previous conviction for burglary, with unlawful possession of a firearm by a serious violent felon.

A jury trial was set for September 18, 2001. On the morning of trial, defense counsel moved for a continuance. He explained that Imel had informed him the previous day that a fellow inmate at the jail had overheard Detective Bennington coerce Imel into admitting that he possessed the firearm. Imel did not know the full name of this inmate and defense counsel requested time to try to locate this inmate based on the limited description Imel had provided. The trial court denied the continuance motion, and Imel was convicted as charged.

*Imel v. State,* No. 02A05–0208–CR–363, slip op. at 18–19, 783 N.E.2d 805 (Ind.Ct. App. Jan. 21, 2003).

During the course of the trial, Imel was referred to as a "violent felon," "serious violent felon," or "felon" by both the trial judge and the State in the opening and closing arguments. Tr. p. 42, 43,128–29, 130–31, 136. While trial counsel moved to bifurcate the proceedings and lodged objections to several of the references to Imel as a violent felon, as well as evidence concerning his previous burglary conviction, appellate counsel did not raise this issue on appeal. Rather, Imel challenged the sufficiency of the evidence and argued that the trial court had erred in denying his motion for a continuance. This court rejected Imel's arguments and affirmed his conviction.

Thereafter, on May 3, 2004, Imel filed a petition for post-conviction relief, arguing

that his appellate counsel was ineffective for not raising the issue of the repeated references to him at trial as a violent felon and to his prior conviction for burglary. In essence, Imel urged that these references deprived him of the presumption of innocence and resulted in an unfair trial. During the hearing, Imel's appellate counsel testified that he considered challenging the process whereby the jury was informed of Imel's prior conviction. However, he did not believe that such an issue would "go anywhere" because he thought that the trial court could mention the prior conviction. Tr. p. 11. Moreover, Imel's counsel discussed the issue with the public defender's office, where it was determined that because the prior conviction was an element of the offense, reference could be made to it at trial. Appellate counsel also considered raising bifurcation as an issue on appeal, but he decided not to pursue it because he knew that the state of the law indicated that this issue also would not "go anywhere" on appeal. Tr. p. 13–14. It was appellate counsel's belief that when the offense of possession of a firearm by a serious violent felon is the only charge, bifurcation is not possible because there would be nothing for the jury to decide regarding the crime that was charged. In the end, Imel's petition for post-conviction relief was denied. In its order denying relief, the post-conviction court observed that:

### FINDINGS OF FACT

. . .

8. Before the trial, attorney Ulmer unsuccessfully moved to bifurcate the proceedings in such a way that the jury would first have determined only whether the defendant possessed a firearm, and would have learned about his prior conviction for burglary only after making that determination. During voir dire, jury instructions and the State's opening and closing presentations, the defendant was referred to as a 'serious violent felon' approximately 28 times. Ulmer did not object to those references. No evidence of actual violence perpetrated by the defendant was introduced at trial; the uncontroverted evidence established that the defendant's prior felony did not result in injury to any person.

9. After consultation with attorney Jack Kenney of the Indiana Public defender council, attorney Olivero concluded that an appellate challenge to the non-bifurcated trial and to the use of the statutory 'serious violent felon' language would not succeed. On appeal, he asserted that the trial court erred in denying the defendant's motion for continuance and that the evidence was insufficient to support his conviction.

. . .

### CONCLUSIONS OF LAW

. . .

8. The next issue relating to the alleged ineffectiveness of appellate counsel is the failure to raise the issue that the defendant was referred to as a 'serious violent felon' approximately 28 times during the trial.

9. Indiana appellate opinions contain dicta that could be used to support an argument [that] 28 times is too many times to call a defendant a 'serious violent felon' at trial. No Indiana decisions, however, have held that the mere use of the statutory expression 'serious violent felon' any number of times, is revers-

ible error. Much less has the use of such statutory language been held to be fundamental error. Attorney Olivero cannot be held to have been ineffective under these circumstances.

. . .

10. The Petition for Post-Conviction Relief is overruled and denied.

Appellant's App. p. 162–63. Imel now appeals.

### DISCUSSION AND DECISION

■ When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Pinkins v. State*, 799 N.E.2d 1079, 1093 (Ind.Ct.App.2003), *trans. denied*. First, the defendant must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness, *id.* at 688, 104 S.Ct. 2052, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. *See id.* at 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* We also note that there is a strong presumption that counsel's representation was adequate. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind.2002). And that presumption can be rebutted only with strong and convinc-

ing evidence. *Elisea v. State*, 777 N.E.2d 46, 50 (Ind.Ct.App.2002).

■ We review claims of ineffective assistance of appellate counsel using the same standard applicable to claims of trial counsel ineffectiveness. *Ben–Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind.2000). The defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Id.* Again, prejudice will be found to exist when "there is a reasonable probability that the result of the proceeding would have been different but for defense counsel's inadequate representation." *Cook v. State*, 675 N.E.2d 687, 692 (Ind.1996).

■ Ineffective assistance claims at the appellate level of proceedings generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193–95 (Ind.1997). Inasmuch as Imel's claim of appellate counsel's ineffectiveness is based on the second category, we note that our supreme court has observed that the reviewing court must be deferential to appellate counsel:

> [T]he reviewing court should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made.

*Timberlake v. State*, 753 N.E.2d 591, 605 (Ind.2001) (quoting *Bieghler*, 690 N.E.2d at 194).

■ Next, we note that this court employs a two-part test to evaluate "waiver of issue" claims: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the

unraised issues are "clearly stronger" than the raised issues. *Id.* at 605–06 (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986)). Stated somewhat differently, "[a] defendant may establish that his appellate counsel's performance was deficient where counsel failed to present a significant and obvious issue for reasons that cannot be explained by any strategic decision." *Ben–Yisrayl v. State,* 738 N.E.2d 253, 261 (Ind.2000).

In addressing Imel's contentions, we note that prejudice may arise in a jury trial when a defendant is identified and repeatedly referred to as a "serious violent felon." *Spearman v. State,* 744 N.E.2d 545, 550 (Ind.Ct.App.2001), *trans. denied.* While prejudice may occur when a jury is informed of a prior conviction under the serious violent felon statute,[1] the focus cannot be placed solely on the question of the prejudicial effect of such evidence because much of the evidence adduced at a criminal proceeding will be prejudicial to the defendant. *Id.* at 549. Rather, the focus should be on whether the prejudice arising from evidence of prior crimes outweighs the probative value of such evidence. *Id.* We also determined in *Spearman* that one who was tried solely for the crime of Unlawful Possession of a Firearm by a Serious Violent Felon was not entitled to have the proceedings bifurcated in such a way that the jury would not hear of his prior felony conviction before it determined whether he was in possession of a firearm. *Id.* at 547–48. We observed that such is the case because evidence of the prior conviction is an essential element of the crime. *Id.* Most recently in *Hines v. State,* 801 N.E.2d 634 (Ind.2004), our supreme court agreed with this court's rationale advanced in *Spearman* where we said that "bifurcation was impractical, if not impossible, because the defendant was tried solely for the offense of Unlawful Possession of a Firearm by a Serious Violent Felon." *Id.* at 635 (quoting *Hines v. State,* 794 N.E.2d 469, 472 (Ind.Ct.App. 2003), *trans. granted,* 801 N.E.2d 634).

In this case, as in *Spearman,* Imel's status as a serious violent felon—in light of his former burglary conviction—was an essential element of the crime that the State was required to prove and therefore refer to in the course of the proceedings. The trial judge related the nature of the case and charge against Imel to prospective jurors by stating, "This case is the State of Indiana v. Kevin J. Imel. Mr. Imel is charged with the offense of Unlawful Possession of a Firearm by a Serious Violent Felony [sic], which is a Class B Felony in Indiana." Appellant's App. p. 80–81. Although it is true that the trial court immediately stated Imel's name in the context of the charges, which included the words "serious violent felon," it cannot be inferred from the record that these comments were intended to show Imel's propensity to commit a serious violent felony. Rather, such a statement served as an accurate recitation of the charge against Imel.

We further note that the remainder of the trial court's references to Imel as a serious violent felon occurred while instructing the jury. Those instructions stated that the charge against Imel was for possession of a firearm by a serious violent felon. Additionally, when the prosecutor referred to Imel during voir dire as a serious violent felon, it was done in the context of accurately stating the charge against Imel and the State's burden of proof regarding the offense. The other references to Imel's status or prior convictions occurred when the prosecutor discussed: (1) why Imel was arrested and

---

1. Ind.Code § 35–47–4–5.

charged with this particular offense; and (3) why actual violence is not statutorily required to commit a serious violent felony. These remarks were also made to show how the State's evidence proved the crime. Tr. p. 42–43, 128–31, 136–37.

Inasmuch as proof of the prior felony and Imel's status were essential elements of the charged offense, the State's references to those matters during the opening and closing statements indicate that the State was simply previewing and summarizing the relevant evidence presented at trial, how it intended to prove the crime, and how it believed it satisfied its burden of proof. In our view, nothing contained in the State's remarks indicates that the reference to Imel's prior conviction or his status as a serious violent felon was unduly prejudicial to the extent that Imel's appellate counsel should have raised this issue on appeal. Thus, the post-conviction court could reasonably conclude that Imel has failed to show that his appellate counsel's performance fell below an objective standard of reasonableness when he did not raise this issue.

As an aside, we also note that in *Spearman*, this court suggested that our trial courts craft jury instructions or refer to prior convictions in a fashion that might minimize the potential for prejudice. For instance, we observed that it might be wise to refer to the prior conviction as "a conviction under Indiana Code section 35–47–4–5," instead of a serious violent felony. *Spearman*, 744 N.E.2d at 550 n. 8. But even in light of this suggestion, we did not determine in *Spearman* that a specific number of references to the defendant as a serious violent felon at trial should rise to the level of reversible error. Hence, we cannot say that Imel has shown that the references to him as a serious violent felon would have changed the result of his trial or appeal.

Finally, we note that even if all of the references to Imel's conviction for a serious violent felony had been changed to be consistent with our suggestion in *Spearman*, there is no showing that the result of the trial would have been different in light of the evidence that was presented against him at trial. To be sure, changing the references of serious violent felon/felony to "conviction for an enumerated offense under Indiana Code section 35–47–4–5" would not have altered the evidence that Imel possessed the firearm as one who had previously been convicted of an offense in accordance with Indiana Code section 35–47–4–5. As a result, we cannot say that Imel suffered prejudice to the extent that a reversal is warranted. For these reasons, we conclude that the post-conviction court properly denied Imel's petition for post-conviction relief.

The judgment of the post-conviction court is affirmed.

BARNES, J., concurs in result with opinion in which KIRSCH, C.J., concurs.

BARNES, Judge, concurring in result.

Given the procedural posture of this case, I readily concur in the result reached here. In order to demonstrate ineffective assistance of appellate counsel based on the failure to raise an issue, a defendant must demonstrate that such failure was unquestionably unreasonable in light of the facts of the case and the precedent available to counsel when the decision not to raise an issue was made. *Concepcion v. State*, 796 N.E.2d 1256, 1259 (Ind.Ct.App. 2003), *trans. denied* (quoting *Stevens v. State*, 770 N.E.2d 739, 760 (Ind.2002), *cert. denied* ). Here, at the time of Imel's direct appeal this court had decided *Spearman*, which as Judge Baker notes held that bifurcation of a trial for a defendant charged solely with being a serious violent felon in possession of a firearm is not

required. Thus, appellate counsel's decision not to challenge Imel's conviction because of non-bifurcation of his trial and references to him being a serious violent felon was a reasonable decision, in light of the *Spearman* precedent.

I would be remiss, however, if I did not state that the phrasing of the serious violent felon statute and its attendant difficulties troubles me deeply. I acknowledge and agree that the state of the law in Indiana is as Judge Baker has so carefully and correctly outlined. *Spearman* is valid precedent that apparently has been approved of by our supreme court in *Hines*. What bothers me is what I perceive to be the strong possibility that as we now charge and try these sorts of cases, the fundamental tenet of our American system of criminal law—innocent until proven guilty—is, in my view, seriously challenged. In this respect, I agree with many of the points raised by Judge Darden in the dissent he authored in *Spearman*. *See Spearman*, 744 N.E.2d at 550–55 (Darden, J., concurring in part and dissenting in part).

The fact is that aggressive and skillful prosecutors, we presume, read our decisions and tailor their strategies to pass legal muster. Trial judges, too, hamstrung by the verbiage of the statute and guided by *Spearman* and *Hines,* conduct their trials pursuant to this guidance and authority. I have no sympathy for or empathy with defendants who fall into the serious violent felon category. Many are what the name implies, career criminals whose conduct merited them going to the Department of Correction for a significant period of time. I also have no qualm with the sound public policy behind prohibiting such defendants from possessing firearms once they have been released from prison. However, a defendant charged with being a serious violent felon in possession of a firearm is still entitled to be presumed innocent of possessing a firearm. By repeatedly referring to the defendant as a serious violent felon, beginning with voir dire and continuing through the trial, arguments of counsel, and jury instructions, it certainly is readily conceivable that a jury may give the State the benefit of the doubt on the question of possession because the defendant is clearly a "bad guy," rather than giving the defendant the benefit of the doubt as is constitutionally required.

I believe that Indiana, through the General Assembly, and perhaps advised by the Criminal Law Study Commission, Indiana Prosecuting Attorney's Council, and the Indiana Public Defender's Council, can and should devise nomenclature and a protocol for trying these types of cases that punishes the guilty but does not employ the drumbeat of the "serious violent felon" label throughout a defendant's trial. To paraphrase Justice Potter Stewart, I know unfairness when I see it. The current law regarding the crime of being a serious violent felon in possession of a firearm is not right and, more importantly, it is not fair.