**Epherm L. WILLIAMS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 18A05–0501–CR–51.**

Court of Appeals of Indiana.

Sept. 21, 2005.

---

Ronald K. Smith, Muncie, for Appellant.

Steve Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Epherm Williams appeals his conviction for unlawful possession of a firearm by a serious violent felon ("SVF"), a Class B felony, and the finding that he is an habitual offender. We affirm in part, reverse in part, and remand.

### Issues

We restate and reorder the issues before us as:

I. whether the trial court properly instructed the jury;

II. whether the State presented sufficient evidence to support Williams's SVF conviction; and

III. whether his habitual offender sentence enhancement is proper.

### Facts

The evidence most favorable to the judgment reveals that in the summer of 2004, Williams began living at his ex-wife Carmen Isom's apartment. Williams slept in Isom's bedroom while she slept on a couch in another room. One day, Williams's and Isom's daughter, S.W., walked into the bedroom and saw Williams holding a gun and rushing to hide it underneath the mattress. After S.W. told Isom what she had seen, Isom went to the bedroom when Williams was not there and confirmed that there was a gun under the mattress. Isom called the police, who discovered an AK–47 under the mattress where Williams had been sleeping. Isom and S.W. confirmed that the AK–47 police seized was the same gun they had seen earlier.

The State filed an SVF charge against Williams and also alleged that he was an habitual offender. The alleged predicate offenses were a 1991 conviction for Class D felony possession of cocaine and a 1999 conviction for Class B felony dealing in cocaine. The 1999 conviction also formed the basis of the SVF charge. A jury found Williams guilty as charged and that he was an habitual offender. The trial court sentenced Williams to fifteen years for the SVF conviction, enhanced by fifteen years for the habitual offender finding. Williams now appeals.

### Analysis

#### I. Jury Instruction

Williams contends the trial court improperly instructed the jury. Specifically, the trial court here bifurcated Williams's trial for the SVF offense. In the first phase, the jury was asked to decide whether Williams possessed the AK–47, and if so in the second phase it would address whether Williams was a "serious violent felon." In its preliminary

instructions, the trial court explained to the jury as follows:

> The Defendant is charged with Illegal Possession of a Firearm. The trial of charge [sic] will be in two (2) stages. In the first stage, there will be a trial on the issue of whether the Defendant knowingly or intentionally possessed the firearm as charged. If you find beyond a reasonable doubt that the defendant knowingly or intentionally possessed the firearm as charged, there will be a second stage of the trial. In the second stage, there will be a trial of the issue whether the Defendant committed a crime by possessing a firearm.

Tr. pp. 22–23. Williams's complaint regarding this instruction is that it allegedly implied that there necessarily would be a second stage of the trial.

We disagree. First of all, we note our approval here of the trial court having bifurcated the trial so as to avoid any labeling of Williams as a "serious violent felon" until after the jury had decided whether he had in fact possessed the AK–47. *See Imel v. State*, 830 N.E.2d 913, 919–20 (Barnes, J., concurring in result). With bifurcation, however, comes the difficulty of explaining to a jury why the defendant is facing trial for merely possessing a firearm. To the extent the trial court's instruction informed the jury that Williams was alleged to have possessed the firearm illegally for some reason, such was likely already the common sense conclusion of the jurors. The instruction also is clear that there would be a second phase of the trial if, and only if, the jury first concluded beyond a reasonable doubt that Williams had knowingly or intentionally possessed a firearm. It did not, as Williams argues, imply that a second phase of the trial was inevitable.

We also note that the current state of the law in Indiana allows for repeated references to a defendant as being an alleged "serious violent felon" from the outset of an SVF trial, before a jury has decided whether the defendant knowingly or intentionally possessed a firearm. *See Spearman v. State*, 744 N.E.2d 545, 550 (Ind.Ct.App.2001), *trans. denied*. The fairness of such a procedure has been questioned. *See Imel*, 830 N.E.2d at 919–20 (Barnes, J., concurring in result); *Spearman*, 744 N.E.2d at 550–54 (Darden, J., dissenting in part). Here, the trial court circumvented legitimate concerns regarding fairness by avoiding reference to Williams as a "serious violent felon" until after the jury had decided whether he had knowingly or intentionally possessed the AK–47. It is not grounds for reversal to refer to a defendant as a "serious violent felon" before his or her guilt or innocence is decided. The trial court's instructions here that deleted such references also surely should not be grounds for reversal.

In sum, we conclude the trial court here struck the proper balance between advising the jury that Williams had indeed been charged with a firearm-related crime and avoiding identifying Williams as a "serious violent felon" from the outset of trial. Although current precedent does not require trial courts to bifurcate SVF trials, we believe that the bifurcation procedure serves the ends of justice in such trials and urge our state's trial judges to use this procedure in SVF cases.

### II. Sufficiency of the Evidence

▮ Williams also contends there is insufficient evidence to support his SVF conviction. When reviewing whether there is sufficient evidence to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses and must respect " 'the jury's exclusive province to weigh conflicting evidence.' " *McHenry v. State*, 820 N.E.2d 124, 126 (Ind.2005) (quoting *Alkhalidi v. State*, 753

N.E.2d 625, 627 (Ind.2001)). Appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. *Id.* We must affirm if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

■ Williams's argument essentially is that there is insufficient evidence he constructively possessed the gun. He notes that in order to prove constructive possession of contraband, the State must prove that the defendant has both (i) the intent to maintain dominion and control over the contraband and (ii) the capability to maintain dominion and control over the contraband. *See Gee v. State,* 810 N.E.2d 338, 340 (Ind.2004). If a defendant is not in exclusive possession of the premises where contraband is found, as apparently was the case here, the intent to maintain control over the contraband must be shown by additional circumstances, such as (1) incriminating statements made by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant. *Id.* at 341.

We need not analyze these factors here. The State may prove a case of illegal possession of contraband by showing actual possession of it, which occurs when a person has direct physical control over the item. *See id.* at 340. Here, Williams's daughter S.W. testified that she saw Williams holding the AK–47 and attempting to quickly hide it under the mattress. This is evidence that Williams actually possessed the AK–47. There was other evidence here that supported this conclusion, such as that the gun was found by police under the mattress in a room where only Williams slept, where S.W. had seen Williams attempting to hide it and where Isom also had seen it. Whether this other evidence by itself could have supported a finding of constructive possession is irrelevant given S.W.'s testimony regarding actual possession.

Williams attempts to discredit S.W.'s testimony by noting she indicated on cross-examination that at least one reason why she told police about seeing her father in possession of the gun was because she was mad at him regarding punishment he had inflicted upon her. S.W., however, reiterated on re-direct examination that her statement regarding Williams's possession of the AK–47 was true. Thus, although S.W. might have been motivated to "snitch" on her own father because she was angry at him, this does not mean that she lied about what she saw. It was exclusively for the jury to decide the weight to be given to S.W.'s testimony and to judge her credibility. We will not second-guess those determinations. The State presented sufficient evidence that Williams possessed the AK–47.

### III. Habitual Offender Enhancement

■ Williams challenges his habitual offender enhancement on two grounds. First, he contends the trial court improperly allowed the State to allege and prove he was an habitual offender by using the same 1999 dealing in cocaine conviction that also supported his classification as a "serious violent felon." *See Conrad v. State,* 747 N.E.2d 575, 592–95 (Ind.Ct.App. 2001), *trans. denied; but see Townsend v. State,* 793 N.E.2d 1092, 1096–97 (Ind.Ct. App.2003), *trans. denied* (holding that legislative amendment to habitual offender statute effectively overruled *Conrad* ). We need not address this argument because

we find the habitual offender enhancement to be invalid for another reason.

The habitual offender statute provides in part:

(a) Except as otherwise provided in this section, the state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.

\* \* \* \* \*

(d) A conviction does not count for purposes of this section as a prior unrelated felony conviction if:

\* \* \* \* \*

(3) all of the following apply:

(A) The offense is an offense under IC 16–42–19 or IC 35–48–4.

(B) The offense is not listed in section 2(b)(4) of this chapter.

(C) The total number of unrelated convictions that the person has for:

(i) dealing in or selling a legend drug under IC 16–42–19–27.

(ii) dealing in cocaine or a narcotic drug (IC 35–48–4–1);

(iii) dealing in a schedule I, II, III controlled substance (IC 35–48–4–2);

(iv) dealing in a schedule IV controlled substance (IC 35–48–4–3); and

(v) dealing in a schedule V controlled substance (IC 35–48–4–4);

does not exceed one (1)....

Ind.Code § 35–50–2–8. In plainer English, this means that a conviction for dealing or possession of an illegal drug does not count for habitual offender purposes if that crime was not classified a "crime of violence" under Indiana Code Section 35–50–2–2(b)(4) and the defendant has only one or no convictions for illegal drug dealing.

The State concedes that all three elements of Indiana Code Section 35–50–2–8(d)(3) exist here with respect to Williams's 1991 conviction for Class D felony possession of cocaine. It is a crime listed under Indiana Code Chapter 35–48–4 (specifically Section 35–48–4–6(a)); it is not listed under Indiana Code Section 35–50–2–2(b)(4); and Williams has only one previous conviction for dealing in cocaine. It is evident that the 1991 conviction could not be used to support an habitual offender enhancement. *See Lampitok v. State*, 817 N.E.2d 630, 644 (Ind.Ct.App.2004), *trans. denied.* We therefore direct that Williams's fifteen-year habitual offender sentence enhancement be vacated.

### Conclusion

Williams has failed to persuade us that the jury was improperly instructed or that his SVF conviction is not supported by sufficient evidence. We do agree that his habitual offender sentence enhancement must be vacated and remand with instructions for the trial court to amend its records and notify the Department of Correction of this change.

Affirmed in part, reversed in part, and remanded.

CRONE, J., and NAJAM, J., concur.