# FOR PUBLICATION



**FILED**
Feb 08 2013, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LISA M. JOHNSON**
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

BILLY RUSSELL,              )
                 )
    Appellant-Defendant,    )
                 )
        vs.           )     No. 49A04-1203-CR-148
                 )
STATE OF INDIANA,      )
                 )
    Appellee-Plaintiff      )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark Stoner, Judge
Cause No. 49G06-1009-MR-75247

**February 8, 2013**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Billy Russell appeals his convictions and sentence for murder and Class B felony possession of a firearm by a serious violent felon ("SVF"). We affirm.

**Issues**

The issues before us are:

    I.    whether the trial court properly refused to completely bifurcate trial of the SVF charge from the murder charge;

    II.    whether the trial court erred by failing to instruct the jury on voluntary manslaughter as a lesser included offense of murder;

    III.    whether the trial court properly refused to give Russell's tendered instruction on self-defense and the perspective of the defendant;

    IV.    whether the trial court properly instructed the jury regarding the exception to a claim of self-defense for committing another crime; and

    V.    whether Russell's eighty-five-year sentence is inappropriate.

**Facts**

On September 18, 2010, Russell was living at a house on Euclid Avenue in Indianapolis with his grandmother, his girlfriend Angel Brown, Brown's child, and Brown's friend, Elizabeth Pearson. Pearson was Jairme Wilburn's long-time girlfriend. Pearson and Wilburn had an argument over the phone at about noon on September 18.

At about 11:00 p.m. on that same day, Wilburn came to the Euclid Avenue house and asked to see Pearson. Pearson went outside, she and Wilburn argued, and then she returned to the house. Wilburn, who appeared to be intoxicated, did not leave, however. Russell went to Pearson's room and told her "that [she] needed to get the f*** outside and handle that s***, because it was between [her] and Jairme." Tr. pp. 43-44. Russell apparently was concerned that Wilburn was being loud and would wake up Brown's child.

Pearson again went outside to argue with Wilburn. During this argument, Wilburn struck Pearson in the face. A bystander at a neighboring house saw Wilburn strike Pearson multiple times, and also heard Wilburn threaten to kill Pearson. The bystander also saw Wilburn throw something against the house. Pearson again retreated into the house, where the others were congregated, and started yelling that Wilburn had just hit her. Pearson did not display any signs of injury. Brown offered her phone to Pearson so she could call 911 if she wanted, but she refused to do so.

After a few minutes, Wilburn entered the house looking for Pearson. Brown and Russell argued with Wilburn and forced him outside, but Wilburn refused to leave without Pearson. As Russell and Brown continued arguing with Wilburn outside, Brown agreed to go inside and try to convince Pearson to speak with Wilburn again. Russell also went inside and retrieved a handgun, which he held behind his back, and went back outside. Wilburn was yelling comments such as threatening to "go[] get his boys," or saying that if anyone touched him he would get two friends of his and "shoot the house

3

up," or "I'll kill every motherf***er in this house." Id. at 76, 189, 230. Sometime after Wilburn made these remarks, Russell drew his gun while Wilburn was facing away from him, said, "You're not going to leave, n***er," and shot him in the back of the head without giving Wilburn a chance to react. Id. at 128. Wilburn died from the gunshot wound.

The State charged Russell with murder and Class B felony possession of a firearm by a SVF, based on a prior conviction for conspiracy to commit robbery. The State later also alleged that Russell was an habitual offender. Russell's jury trial was held on February 13-14, 2012. Russell proceeded upon a claim of self-defense; he neither denied carrying out the shooting nor did he request the jury be instructed on the offense of voluntary manslaughter. Over Russell's objection, the trial court did not completely bifurcate trial of the SVF charge from the murder charge. Instead, along with trial of the murder charge the trial court instructed the jury to consider whether Russell had committed the crime of "unlawful possession of a firearm" by knowingly possessing a firearm. App. p. 150. It also instructed the jury that if it found Russell had killed Wilburn in self-defense, then Russell also could not be convicted of "unlawful possession of a firearm" because that would constitute "lawful" use of the gun. Id. at 171.

The jury found Russell guilty of murder and "unlawful possession of a firearm." In phase two of the trial, the jury was asked to consider whether Russell was a SVF so as to support a conviction on the SVF charge. The jury found that Russell was a SVF and convicted him of the SVF charge and found that he was an habitual offender. The trial

4

court sentenced Russell to a term of fifty-five years for the murder, enhanced by thirty years for the habitual offender finding. It also sentenced him to fifteen years for the SVF conviction, to run concurrently with the murder sentence. Russell now appeals.

## Analysis

### *I. Partial Bifurcation*

First, we address Russell's argument that the trial court erred by not completely bifurcating or severing trial of the SVF charge from trial of the murder charge. As noted, Russell moved that the two charges be tried completely separately. Instead, the trial court, in conjunction with the murder trial, instructed the jury to consider whether Russell had committed the crime of "unlawful possession of a firearm" by knowingly possessing a firearm. App. p. 150. It also instructed the jury that if it found Russell had killed Wilburn in self-defense, then Russell also could not be convicted of "unlawful possession of a firearm" because that would constitute "lawful" use of the gun. Id. at 171. After the jury found Russell guilty of murder and that he had knowingly possessed a firearm, it found in a separate trial that he had the necessary prior conviction to support a conviction on the SVF charge.

We review a trial court's decision regarding bifurcation of a prosecution for an abuse of discretion. Dugan v. State, 860 N.E.2d 1288, 1290 (Ind. Ct. App. 2007), trans. denied. An abuse of discretion occurs if a decision is clearly against the logic and effect of the facts and circumstances before the court. Id.

5

Several Indiana cases have discussed the problematic nature of trying SVF charges to a jury, based on the labeling of the defendant as a "serious violent felon" during trial and the necessity of the State introducing evidence of the defendant's prior criminal history supporting that designation. First, in Spearman v. State, 744 N.E.2d 545, 550 (Ind. Ct. App. 2001), trans. denied, we held that a defendant facing a SVF charge (and no other charge) is not necessarily entitled to a bifurcated trial in which the jury is first asked to determine whether the defendant possessed a gun, and second whether the defendant has a prior conviction that qualifies as a "serious violent felony." Nevertheless, we were concerned about the possible prejudice that could arise from repeatedly referring to a defendant as a "serious violent felon" and urged trial courts to avoid using that phrase during trial. Id.

Next, in Hines v. State, 794 N.E.2d 469 (Ind. Ct. App. 2003), we addressed a situation similar to the present case where the defendant was facing a SVF charge and another charge, namely robbery. In such a situation, we held that it was an abuse of discretion for the trial court to refuse to bifurcate trial of the SVF and robbery charges, because the unfair prejudice resulting from the prior conviction evidence necessary to support the SVF charge substantially outweighed any probative value with respect to the robbery charge; in fact, the prior conviction had no probative value with respect to the robbery charge. Id. at 472. Our supreme court subsequently adopted our opinion in Hines. Hines v. State, 801 N.E.2d 634 (Ind. 2004).

6

Finally, in Williams v. State, 834 N.E.2d 225 (Ind. Ct. App. 2005), the defendant was charged with SVF firearm possession only. The trial court decided to bifurcate trial of the SVF charge and informed the jury at the outset that the defendant had been charged with "Illegal Possession of a Firearm." It also instructed the jury that it would first decide whether the defendant had knowingly possessed a firearm and instructed the jury that if it did so find, there would be a second stage of the trial. The jury did find the defendant had knowingly possessed a firearm, and in the second stage of the trial found that he was serious violent felon and convicted him of the SVF charge. On appeal, we rejected the defendant's argument that the trial court had necessarily implied to the jury that there would be a second stage of trial. Instead, we applauded the trial court's bifurcation of the trial and stated, "Although current precedent does not require trial courts to bifurcate SVF trials, we believe that the bifurcation procedure serves the ends of justice in such trials and urge our state's trial judges to use this procedure in SVF cases." Williams, 834 N.E.2d at 228.

This case is not exactly like Spearman, Hines, or Williams. Nor have we found any case directly on point, where a trial court bifurcated trial of a SVF charge, so that no evidence of a defendant's prior criminal history came in during the first part of trial, but permitted a jury to determine the question of possession of a firearm in conjunction with trial of another charge. In that sense, this case is a hybrid of Hines and Williams. As the line of cases beginning with Spearman have made clear, the primary concern with SVF trials is the labeling of a defendant as a "serious violent felon" and the introduction of

7

evidence of a defendant's criminal history in order to prove SVF status. See also Imel v. State, 830 N.E.2d 913, 919-20 (Ind. Ct. App. 2005) (Barnes, J., concurring in result), trans. denied. None of the cases have expressed concern about proving the fact of a defendant's possession of a firearm simultaneously with another crime. In fact, Russell has cited no case, nor has our research revealed, any case holding that a charge of carrying a handgun without a license must be bifurcated from a simultaneous offense, such as murder. Thus, there was no prejudice in asking the jury to decide whether Russell knowingly possessed a firearm at the same time it was asked to decide whether he committed murder.

Regardless, Russell contends it was erroneous to instruct the jury on the non-existent offense of "unlawful possession of a firearm," especially assuming that most jurors would know through common knowledge that possession of a firearm, standing alone, is not a criminal offense. We directly addressed this type of argument in Williams and rejected it. Specifically, we held that by bifurcating the SVF trial so that the questions of knowing possession of a firearm and the defendant's SVF status were tried separately, "the trial court . . . struck the proper balance between advising the jury that Williams had indeed been charged with a firearm-related crime and avoiding identifying Williams as a 'serious violent felon' from the outset of trial." Williams, 834 N.E.2d at 228.

Russell also claims that asking the jury to decide whether he committed "unlawful possession of a firearm" simultaneously with deciding whether he committed murder

8

undermined his self-defense claim. He notes the general proposition that a defendant cannot claim self-defense if he or she is committing another crime at the time defensive action is taken, so long as there is an immediate causal connection between the crime and the confrontation. Mayes v. State, 744 N.E.2d 390, 394 (Ind. 2001). Additionally, self-defense may be a valid defense to a SVF charge. See Harmon v. State, 849 N.E.2d 726, 734 (Ind. Ct. App. 2006). Russell asserts that if the jury found he committed "unlawful possession of a firearm," a non-existent offense, it would have precluded the jury from accepting his self-defense claim for Wilburn's death.

We disagree. The trial court expressly informed the jury in instruction number 10:

> As to Count II ["unlawful possession of a firearm"], if the jury determines that the Defendant lawfully exercised his right to self defense as to the allegations contained within Count I [murder], the Defendant may not be convicted of Unlawful Possession of a Firearm as the jury would have determined that the Defendant's usage of the gun was, in fact, lawful.
>
> However, should the jury conclude that the Defendant is not guilty of Count I for some reason other than self defense, the jury may then continue to deliberate on whether the State has proven the elements of Count II beyond a reasonable doubt.

App. p. 171. Although Russell contends otherwise, we believe this instruction adequately informed the jury that his mere possession of a firearm would not preclude his claim of self-defense to murder by effectively telling it that any use of the firearm for self-defense purposes would be a "lawful," not "unlawful," use of the gun. Additionally, under this instruction a finding of self-defense as to the murder charge also would have precluded

9

his conviction for "unlawful possession of a firearm" and, necessarily, for possession of a firearm by a SVF.

We conclude that although the trial court could have completely bifurcated trial of the SVF charge from the murder charge, Hines did not require it so long as no mention was made of Russell's alleged "serious violent felon" status or of his criminal history as part of the murder trial. The trial court's partial bifurcation accomplished that goal and, therefore, is consistent with Hines, Spearman, and Williams. Moreover, the trial court's jury instructions adequately protected Russell's ability to claim self-defense for both murder and the SVF charge. There was no abuse of discretion in the trial court's partial bifurcation method of trying this case.

## II. Voluntary Manslaughter Instruction

We next address Russell's claim that the trial court committed error by failing to instruct the jury that it had the option of convicting him of voluntary manslaughter as a lesser included offense of murder. Russell did not request that the jury be so instructed. A claim of error based on a trial court's failure to give a jury instruction is waived if the defendant failed to tender that instruction. Covey v. State, 929 N.E.2d 813, 819 (Ind. Ct. App. 2010). In such a case, the defendant must establish that the failure to give an instruction constituted fundamental error. Id. A fundamental error is one that constitutes a blatant violation of basic principles, creating or potentially creating substantial harm, with a resulting denial of fundamental due process to the defendant. Id. We also observe that the purpose of the contemporaneous objection/waiver rule is to promote a fair trial by

10

preventing a party from sitting idly by and appearing to assent to a trial court's actions, only to cry foul when the outcome goes against him or her. Purifoy v. State, 821 N.E.2d 409, 412 (Ind. Ct. App. 2005), trans. denied.

Russell argues there is substantial evidence in the record of provocation by Wilburn, such that a jury could have found that he was acting under the influence of "sudden heat" when he shot Wilburn. The existence of "sudden heat" is a mitigating factor that reduces what would otherwise be murder to voluntary manslaughter. McWhorter v. State, 970 N.E.2d 770, 775 (Ind. Ct. App. 2012). Even if there was such evidence of "sudden heat," Indiana courts have held as a general rule that it is not fundamental error for a court not to sua sponte give a jury instruction on a lesser included offense. Sarwacinski v. State, 564 N.E.2d 950, 951 (Ind. Ct. App. 1991) (citing Metcalf v. State, 451 N.E.2d 321, 326 (Ind. 1983)).

We also cannot ignore the possibility that trial counsel here deliberately did not request an instruction on voluntary manslaughter as part of an "all-or-nothing" strategy; i.e., counsel might have felt it best for her client to attempt to obtain an outright acquittal for murder on a claim of self-defense rather than giving the jury the option of "compromising" and convicting him of voluntary manslaughter. Such a strategy can be a reasonable one for an attorney to make. See Watts v. State, 885 N.E.2d 1228, 1233 (Ind. 2008). If trial counsel made such a decision—which we do not know—then it would be improper to have allowed a gamble on an "all-or-nothing" strategy, with the option of obtaining a reversal on the murder conviction in the event the gamble failed because of

11

the failure to give a voluntary manslaughter instruction. In sum, we conclude Russell has failed to demonstrate the existence of fundamental error in the trial court's failure to sua sponte give a voluntary manslaughter instruction to the jury.

### III. Self-defense Instruction Regarding a Defendant's Perspective

Next, Russell argues the trial court erred by refusing to give the following tendered jury instruction:

> With regard to the defense of self-defense, the existence of the danger, the necessity or apparent necessity of using force, as well as the amount of force required can only be determined from the standpoint of the accused at the time and under the then existing circumstances.
>
> A person's belief of apparent danger does not require the danger to be actual but only that the belief be in good faith.

App. p. 212. The trial court's full instruction regarding self-defense was as follows:

> a. A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force and does not have a duty to retreat if the person reasonably believes that the force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this State shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.
>
> b. A person is justified in using reasonable force, including deadly force, against another person; and does not have a duty to retreat; if the person reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on the person's dwelling, curtilage or occupied motor vehicle.

12

Notwithstanding A and B, a person is not justified in using force if:

     1.     The person is committing or escaping after the commission of a crime;

     2.     the person provokes unlawful action by another person with intent to cause bodily injury to the other person;

     3.     the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.

Id. at 168-69. The language of this instruction directly tracks the relevant portions of the self-defense statute, Indiana Code Section 35-41-3-2.

The manner in which a trial court instructs a jury is largely within the sound discretion of the trial court, and we review a trial court's decision regarding instructions only for an abuse of that discretion. Orta v. State, 940 N.E.2d 370, 376 (Ind. Ct. App. 2011), trans. denied. We must consider the following when reviewing a trial court's refusal to give a defendant's tendered jury instruction: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. Lewis v. State, 898 N.E.2d 429, 433 (Ind. Ct. App. 2008), trans. denied.

13

Russell asserts that his tendered instruction was necessary to fully inform the jury of the proper standard for a finding of self-defense, namely, that the perspective of the defendant in gauging the danger he or she faced at the time force was used is critical. The primary basis of Russell's argument is our supreme court's decision in French v. State, 273 Ind. 251, 403 N.E.2d 821 (1980). In French, a defendant claimed self-defense in a murder prosecution. The trial court gave the following instruction regarding the use of deadly force in self-defense:

> A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person in the commission of a forcible felony.

French, 273 Ind. at 255, 403 N.E.2d at 824. Our supreme court held this instruction to be inadequate and its inadequacy to be reversible error, stating:

> At no point in the instructions given was the jury informed that in the exercise of the right, a defender may repel force by force reasonably necessary and that he will not be accountable for an error in judgment as to the amount of force necessary, provided he acted honestly. Neither did the court's instructions apprize the jury that the existence of the danger, the necessity or apparent necessity, as well as the amount of force required to resist the attack can only be determined from the standpoint of the defendant, at the time and under the then existing circumstances.

Id. at 256, 403 N.E.2d at 825. Our supreme court has never expressly overruled French. Taken at face value, French might have required more expansive jury instructions than

14

the instruction the trial court here gave, including at least some of the language in the instruction Russell tendered.

However, in Shaw v. State, 534 N.E.2d 745 (Ind. 1989), our supreme court addressed a case in which the jury was given self-defense instructions that stated merely that self-defense had to be based upon the reasonable belief of the defendant of the need for force and omitted any mention of "the standpoint of the accused" or other language that French arguably required. Regardless, the Shaw opinion held that the jury instructions there went beyond those disapproved of in French and were sufficient. Shaw, 534 N.E.2d at 747. The court stated:

> [T]he jury was repeatedly told that the standard to be considered by the jury was the reasonable belief of the defendant. . . . We cannot see how such language could be interpreted by a jury in any manner other than that the standard to be used was the state of mind of the defendant at the time of the infliction of the injury.

Id.

Relying upon Shaw's "clarification" of French, this court subsequently approved the giving of a pattern jury instruction on self-defense that was highly similar to the instruction given here. See Davis v. State, 691 N.E.2d 1285, 1289-90 (Ind. Ct. App. 1998). We further note that in Brown v. State, 738 N.E.2d 271, 275 (Ind. 2000), our supreme court described the language in French as a "suggested" jury instruction, not a mandated instruction.[1] More recently, our supreme court held that "the phrase

---

[1] Russell cites a number of other cases in support of his argument, but those cases either do not address jury instructions or they address self-defense instructions that were problematic for reasons other than

15

'reasonably believes,' as used in the Indiana self-defense statute, requires both subjective belief that force was necessary . . ., and that such belief was one that a reasonable person would have under the circumstances." Littler v. State, 871 N.E.2d 276, 279 (Ind. 2007). Relying upon Littler, this court held in Huls v. State, 971 N.E.2d 739, 745-46 (Ind. Ct. App. 2012), trans. denied, that a trial court did not abuse its discretion in refusing to give the defendant's tendered self-defense jury instructions that referred to the necessity of force being determined "only . . . from the standpoint of the accused under all of the circumstances . . . ." Specifically, we noted that the tendered instructions did not correctly state the law because they did not inform the jury to equally consider whether the defendant's belief in the need for force was objectively reasonable under the circumstances. Id.[2]

We conclude that Russell's tendered jury instruction suffers from the same flaw as the tendered instructions in Huls: it did not inform the jury that Russell's perception of danger had to be an objectively reasonable perception. It focused solely upon Russell's subjective state of mind. Although the instruction did require a finding of "good faith" belief in the danger, that still is a question of subjective state of mind, and not whether an

those mentioned in French. See, e.g., Hirsch v. State, 697 N.E.2d 37, 42 n.10 (Ind. 1998); Harmon v. State, 849 N.E.2d 726, 731 (Ind. Ct. App. 2006); Carson v. State, 686 N.E.2d 864, 865 (Ind. Ct. App. 1997), trans. denied.

[2] We also are aware that our supreme court recently granted transfer in Washington v. State, 973 N.E.2d 91 (Ind. Ct. App. 2012), in which we stated our belief that Shaw "implicitly" disapproved of French. Regardless, the grant of transfer does not by itself indicate our supreme court's disagreement with the ultimate conclusion in that case that the jury had been properly instructed on self-defense, despite the absence of the French "standpoint of the accused" language. While awaiting our supreme court's ruling in Washington, we are obligated to continue deciding cases based on our understanding of the current state of the law.

objectively reasonable person would have found the danger to have required the use of deadly force. Thus, Russell's tendered instruction is an incomplete and incorrect statement of the law. By contrast, the instruction actually given by the trial court, taken directly from the self-defense statute, repeatedly advised the jury that Russell had to have "reasonably" believed in the danger facing him and in the amount of force used against that danger. This was adequate to inform the jury of the proper state of mind to support a claim of self-defense. See Shaw, 534 N.E.2d at 747. As such, we cannot say the trial court abused its discretion in refusing to give Russell's tendered jury instruction.

### IV. Self-defense Instruction on Nexus Requirement

Russell contends the trial court committed a second error with respect to its self-defense instruction. Namely, he argues that the instruction, while noting that self-defense cannot be claimed if a defendant was committing a crime at the time force was used, failed to inform the jury that this limitation only applies if there was a causal nexus between the crime and the use of force. More specifically, a defendant can claim self-defense, even if he or she is committing another crime at the time defensive action is taken, if there is not an immediate causal connection, or nexus, between the crime and the confrontation that led to the use of force. Mayes v. State, 744 N.E.2d 390, 394 (Ind. 2001). If a defendant requests an instruction regarding the nexus requirement and the evidence supports a defendant's claim of a lack of immediate causal connection between his or her crime and the ultimate use of force, then a trial court should give such an instruction. Smith v. State, 777 N.E.2d 32, 36 (Ind. Ct. App. 2002), trans. denied.

17

Russell, however, did <u>not</u> request such an instruction. Again, a claim of error based on a trial court's failure to give a jury instruction is waived if the defendant failed to tender that instruction. <u>Covey v. State</u>, 929 N.E.2d 813, 819 (Ind. Ct. App. 2010). In such a case, the defendant must establish that the failure to give an instruction constituted fundamental error, as described in part II of this opinion. <u>Id.</u>

<u>Smith</u> strongly suggested that it is not fundamental error not to give a nexus requirement instruction when the defendant does not request one. <u>Smith</u>, 777 N.E.2d at 36 (citing <u>Mayes</u>, 744 N.E.2d at 394-95, and noting <u>Mayes</u> did not find reversible error in failing to give a nexus requirement instruction where there was no indication such an instruction explaining that point of law had been requested). Moreover, Russell's primary concern with the failure to give a nexus requirement instruction is, again, that the jury could have rejected his self-defense claim for murder if it had found he committed the non-existent crime of "unlawful possession of a firearm." As we discussed in part I of this opinion, the trial court's final instruction 10 alleviated that concern by informing the jury that if Russell had used the gun in self-defense, then his possession of the firearm would not have been "unlawful." Although not a verbatim recitation of the nexus requirement in self-defense claims, instruction 10 sufficiently precluded the possibility that the jury could reject Russell's self-defense claim on the basis that he committed the crime of "unlawful possession of a firearm." As such, we find no fundamental error in the trial court's failure to expressly instruct the jury on the nexus requirement.

*V. Sentence*

18

Finally, Russell contends that his eighty-five year sentence is inappropriate under Indiana Appellate Rule 7(B) in light of his character and the nature of the offense. In actuality, however, it is only the fifty-five year sentence for murder that he challenges, which is the advisory sentence for that offense. Ind. Code § 35-50-2-3(a). He requests that we reduce that sentence to the minimum of forty-five years. He does not challenge the concurrent fifteen-year sentence for possession of a firearm by a SVF, nor does he challenge the thirty-year habitual offender enhancement to his sentence.[3]

Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the

---

[3] Russell cannot challenge the length of that enhancement anyway, as it was a mandatory term upon the finding that he is an habitual offender. See I.C. § 35-50-2-8(h).

19

crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224.

Russell focuses primarily upon the nature of the offense as warranting a reduction of his sentence. He argues that even though the jury rejected his claim of self-defense, there was considerable evidence that Wilburn provoked him into the shooting. The trial court did agree that "the victim somewhat contributed to the circumstance. The victim was out of control. He was being mouthy. He was being disrespectful to people who actually cared about him . . . . There's no indication that Mr. Russell went out from the house just simply to commit a murder." Tr. p. 337.

However, even if Russell did not premeditate Wilburn's murder and Wilburn acted provocatively immediately before the shooting, there is considerable evidence of Russell's poor character. Russell did express remorse at sentencing, and the trial court found that expression to be credible. But Russell's criminal history is extensive, going well beyond the minimum necessary to classify him as either an habitual offender or SVF. As a juvenile, Russell was referred to the justice system on ten occasions, beginning in 1993, with resulting delinquency findings for Class B misdemeanor disorderly conduct, Class A misdemeanor resisting law enforcement, Class A misdemeanor battery, and Class C misdemeanor operating a vehicle without a license. As an adult, Russell has convictions for Class D felony dealing in marijuana or hash, Class B felony conspiracy to commit robbery, Class A misdemeanor carrying a handgun without a license, Class C felony battery, Class D felony auto theft, two counts of Class

A misdemeanor battery by bodily waste, a conviction for Class D felony battery by bodily waste that was reduced to a Class A misdemeanor, two counts of Class D felony battery resulting in bodily injury, one of which was reduced to a Class A misdemeanor, and two counts of Class A misdemeanor battery. While previously incarcerated in the Department of Correction, Russell amassed 114 conduct reports. Russell was placed on probation three times and on community corrections twice, and he had his placement on probation and community corrections revoked on all five occasions. He had been released from his most recent period of incarceration just four months before killing Wilburn. He informed the probation officer preparing the presentence report that he smoked marijuana daily from the age of twelve, up to and including the day of the murder, that he illegally used prescription medications weekly from the age of sixteen, and occasionally used cocaine, most recently one week before the murder. Although Russell had previously been ordered to complete substance abuse treatment while on probation, he never did so. At the time of the murder, Russell was only twenty-six years old. Suffice it to say, Russell has consistently and for many, many years demonstrated a complete inability to comply with the law, whether he has been free, on probation or community corrections, or even while incarcerated.

Russell asserts that his criminal history should be "offset to some extent" by evidence of a disadvantaged childhood. Appellant's Br. p. 45. Generally, however, such evidence warrants little consideration when evaluating sentences. See Coleman v. State,

741 N.E.2d 697, 700 (Ind. 2000), cert. denied.[4]  He also notes there is evidence in the presentence report that at some point, he was diagnosed with bipolar disorder and intermittent explosive disorder and may have been hospitalized for those conditions at some point.  However, Russell told the probation officer preparing the presentence report that "he is not currently experiencing any mental health concerns."  Presentence Report p. 14.  There was no evidence presented to contradict Russell's self-assessment of his mental health or to suggest he was having difficulty at the time of the murder.  We cannot conclude that Russell's childhood and past mental health issues excuse or reduce the severity of his criminal history and related misconduct.

Russell compares his case to Biehl v. State, 738 N.E.2d 337, 339 (Ind. Ct. App. 2000), trans. denied, and Griffin v. State, 963 N.E.2d 685 (Ind. Ct. App. 2012).  In Biehl, we reduced a then-presumptive thirty-year voluntary manslaughter sentence to twenty years, and in Griffin we reduced an advisory fifty-five year sentence for murder to forty-five years.  In both cases, there was substantial evidence of provocation by the victims that led to the killings.  However, in direct contrast to the present case, neither of the defendants in Biehl or Griffin had any adult criminal history whatsoever, which was a key factor in our decision to reduce the sentences.  Here, Russell's criminal history and related misconduct more than justify imposition of the advisory fifty-five year term for

---

[4] Coleman did further address that such evidence may be relevant and presented to a jury being asked to decide whether to recommend imposition of the death penalty, which is a different consideration than appellate review of non-death penalty sentences.

murder, despite evidence that Wilburn may have helped provoke the shooting. Therefore, that sentence is not inappropriate.

## Conclusion

The trial court did not abuse its discretion in refusing to completely bifurcate trial of the SVF charge from the murder charge and in refusing to give Russell's tendered self-defense jury instruction. The trial court also did not commit fundamental error by not giving an instruction on voluntary manslaughter as a lesser included offense of murder, or by not giving an instruction on the nexus requirement for the committing a crime exception to a claim of self-defense. Finally, Russell's sentence is not inappropriate. We affirm.

Affirmed.

BAKER, J., and RILEY, J., concur.