**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 30 2013, 7:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEVIN BUCKLEY | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1211-CR-564 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert Altice, Judge
Cause No. 49G02-1110-FB-071080

**July 30, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Kevin Buckley ("Buckley") appeals his conviction in Marion Superior Court for Class C felony battery. He argues that the trial court abused its discretion in failing to adequately and properly instruct the jury as to his self-defense claim, and that although his trial counsel did not object to the instruction at trial, the instruction given amounts to fundamental error. We disagree and affirm.

**Facts and Procedural History**

On October 3, 2011, Buckley arrived at Capitol Used Tire Shop in Indianapolis with the intention of returning an allegedly defective tire he had purchased two days prior. Buckley did not have the receipt for the tire with him, and the store owner, Bhagwant Kaur ("Kaur"), informed Buckley that he would need to have a receipt in order to return the tire. Buckley informed Kaur that he did not want to go home and retrieve the receipt because it was too far away and he would use too much gas in the course of the trip. The Capitol Used Tire Shop deploys security cameras, and those cameras recorded most of the disputed facts in this case. The videos from those cameras were admitted into evidence at trial and shown to the jury.

In addition to speaking with Kaur, Buckley approached and spoke with an employee named Christopher Smith ("Smith") and also the employee who installed the defective tire, Rufus Hawkins ("Hawkins"). Each of the employees informed Buckley that they could not help him without the receipt.

During the conversation between Hawkins and Buckley, Buckley asked if he could buy another tire while he was at the store, and return later with the receipt for a refund of the defective tire. Buckley testified that Hawkins became irate, and accused Buckley of

2

trying to make him look bad by returning the tire that Hawkins had installed. Buckley also claims that Hawkins threatened to "kick [Buckley's] ass." Tr. pp. 176-77. At this point, Buckley began to yell and curse at Hawkins, who replied, "just wait" and moved back toward the garage. Tr. p. 177. Buckley testified that he believed Hawkins was "trying to do something" or "trying to grab something" from inside the garage, and Buckley felt threatened. Tr. pp. 178-79. Buckley also noticed that Hawkins's demeanor was strange and that his eyes were red. Buckley admitted, however, that he never saw Hawkins reach for anything or hold anything in his hands.

As Hawkins walked away from Buckley, Buckley took several steps toward Hawkins, approaching Hawkins's right side, and, while Hawkins was facing in a different direction, Buckley swung at Hawkins's head with his right hand. Although the initial punch did not land, Hawkins stepped or stumbled back. Buckley was then able to punch Hawkins a second time, now using his left arm. This punch struck Hawkins, causing him to fall backwards to the pavement. During the fall, Hawkins's head struck the pavement.

After the first punch was thrown, Kaur called 911 to get help. She continued to watch the altercation while on the phone with the emergency dispatcher, and she began screaming as she watched Hawkins fall to the ground. Smith, upon hearing the screaming, came out of the garage, where he had been working on another tire. Although Smith did not observe the full altercation, he did see Hawkins fall to the ground. Smith also called 911 and then caught the attention of some nearby patrol officers for help. As Smith was calling 911, Buckley's mother and another woman pulled Buckley away, and he fled the scene.

3

Emergency medical services technicians called to the scene rushed Hawkins to the hospital. Meanwhile, police officers obtained a suspect description from Kaur and Smith that identified an African American male named Kevin. They also gave a vivid description of Buckley's eyes. Police officers were later able to apprehend Buckley and arrest him. Detective Brian Lemond ("Lemond") was assigned to the case and arrived at the scene in order to collect evidence for crime lab processing. The following day, Lemond showed photo arrays to Kaur and Smith, separately, and from those arrays, each selected a photo of Buckley as the perpetrator who injured Hawkins.

As a result of the fall, Hawkins suffered brain swelling, a skull fracture, bruises to both frontal lobes, and subdural hematomas on both sides of his head.[1] This type of injury has a mortality rate of eighty percent, and Hawkins did, in fact, lapse into a coma following the impact. The injuries required immediate surgery, and although Hawkins has recovered well from his severe injuries, he continues to be handicapped by long-term brain damage caused from the impact of his head on the pavement.

At the time of trial, Hawkins was living in a nursing home, and could not recall who caused his injuries or when and how they happened. In addition to suffering from memory loss of the event, Hawkins suffers from impaired higher brain function, including short term memory problems, difficulty integrating information, and problems regulating his emotions.

---

[1] A blood test taken while Hawkins received hospital treatment revealed that Hawkins tested positive for PCP, cocaine, opiates, cannabinoids and methadone.

4

On October 5, 2011, the State charged Buckley with aggravated battery, a Class B felony. The State also alleged that Buckley was an habitual offender.

The aggravated battery charge proceeded to a jury trial on September 24 and 25, 2012. During the jury trial, Buckley raised his claim of self-defense, relying on his testimony that he felt threatened by Hawkins. The court gave one jury instruction, Final Instruction 10, on the issue of self-defense. It stated, in pertinent part:

It is an issue whether the Defendant acted in self-defense.

A person may use reasonable force against another person to protect himself from what he, or from what the Defendant reasonably believes to be the imminent use of unlawful force.

A person is justified in using deadly force, and does not have a duty to retreat, only if he reasonably believes that deadly force is necessary to prevent serious bodily injury to himself or a third person.

However, a person may not use force if:

1. He is committing a crime that is directly and immediately connected to the confrontation
2. He is escaping after the commission of a crime that is directly and immediately connected to the confrontation
3. He provokes a fight with another person with the intent to cause bodily injury to that person
4. He has willingly entered into a fight with another person or started the fight, unless he withdraws from the fight and communicates or threatens to continue to fight

The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.

Appellant's App. p. 139. Buckley did not raise an objection to this instruction at trial.

During deliberations, the jury indicated in a note to the court that five of the jurors believed Buckley's claim of self-defense upon entering deliberations and that they had

5

not moved toward a unanimous decision regarding the Class B felony aggravated battery charge as a result. The jury did eventually come to a unanimous agreement as to a guilty verdict on a lesser-included offense, Class C felony battery and Buckley was convicted of Class C felony battery on September 25, 2012.

Buckley waived his right to a jury trial with respect to the habitual offender allegations. After a bench trial on that count, Buckley was found to be an habitual offender. On October 10, 2012, the trial court sentenced Buckley to eight years executed for the battery conviction, with a six-year enhancement for being an habitual offender, for a total sentence of fourteen years to be served in the Indiana Department of Correction. Buckley now appeals.

## Discussion and Decision

Buckley argues that the final jury instruction on the issue of self-defense was incomplete, and therefore, the trial court abused its discretion by tendering it to the jury. Generally, instructing the jury is within the sound discretion of the trial court. Rogers v. State, 897 N.E.2d 955, 962 (Ind. Ct. App. 2008), trans. denied. This court reviews a trial court's instructions for an abuse of discretion, but will not reverse the trial court's ruling unless the instructions misstate the law or otherwise mislead the jury. Id. In reviewing a trial court's decision to give or refuse a tendered instruction, we consider: (1) whether the tendered instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the tendered instruction; and (3) whether the substance of the tendered instruction is covered by other given instructions. Id.

However, Buckley failed to raise an objection to the final jury instruction at trial. Additionally, Buckley's tendered instruction at trial did not differ in substance from the one issued by the trial court. In fact, the copy of the tendered instructions Buckley submitted in his appendix notes in handwriting, "Crt [sic] will give," indicating that Buckley's instructions were accepted into the court's final instruction. Appellant's App. p. 120.[2]

It is well settled that the failure to object to a jury instruction at trial waives the issue on review. Munford v. State, 923 N.E.2d 11, 13 (Ind. Ct. App. 2010) (citing Gamble v. State, 831 N.E.2d 178, 185 (Ind. Ct. App. 2005), trans. denied). In order to avoid waiver, Buckley claims that the final jury instruction regarding self-defense constituted a fundamental error. "The fundamental error exception to waiver is an extremely narrow one . . . . To rise to the level of fundamental error, the error must be so prejudicial to the rights of the defendant as to make a fair trial impossible." Id. (internal citations omitted). In particular, the error must constitute a "blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." Id.

When considering a claim of fundamental error with respect to a trial court's ruling on jury instructions, this court looks to the instructions as a whole to determine if they were adequate. Id. (citing Ringham v. State, 768 N.E.2d 893, 898 (Ind. 2002)). The

---

[2] The State contends that Buckley invited error by tendering an instruction that was issued and later claiming that instruction was inadequate. Appellee's Br. at 8 (citing Dickenson v. State, 835 N.E.2d 542, 549 (Ind. Ct. App. 2005); Kemp v. State, 647 N.E.2d 1143, 1146 (Ind. Ct. App. 1995)). Notwithstanding this potential waiver or invitation of error, we address Buckley's argument under fundamental error doctrine. See Gamble v. State, 831 N.E.2d 178, 185 (Ind. Ct. App. 2005), trans. denied.

purpose of jury instructions is to inform the jury of the applicable law without misleading the jury. Murray v. State, 798 N.E.2d 895, 899-900 (Ind. Ct. App. 2003). The instructions should enable the jury to comprehend the case and arrive at a just fair, and correct verdict. Id.

Buckley claims that although his tendered instruction was included in the trial court's final instructions, the final instruction issued on self-defense was, nevertheless, inadequate. The trial court in Buckley's case issued a final instruction that stated, in part, "[a] person may use reasonable force against another person to protect himself from what he, or from what the Defendant reasonably believes to be the imminent use of unlawful force." Appellant's App. p. 139. Buckley argues that the instruction was inadequate because it failed to the inform jury that "[t]he existence or appearance of danger to a defendant, the necessity of defending himself, and the amount of force necessary must be determined from the standpoint of the accused at the time and under the existing circumstances as shown by the evidence." Appellant's Br. at 6 (citations omitted). Buckley contends that absent such a clarification, "jurors would interpret the words "reasonable" and "reasonably" in Final Instruction 10 as meaning what *they* . . . would find to be reasonable force." Id. (emphasis in original).

Buckley is correct that our supreme court has held that instructions that failed to inform the jury "that in the exercise of the right of self-defense, a defender may repel force by force reasonably necessary and that he will not be accountable for an error in judgment as to the amount of force necessary provided he acted honestly" were inadequate. French v. State, 273 Ind. 251, 256, 403 N.E.2d 821, 825 (Ind. 1980). The

8

instructions at issue in <u>French</u> also failed to "apprize the jury that the existence of the danger, the necessity or apparent necessity, as well as the amount of force required to resist the attack can only be determined from the standpoint of the defendant at the time and under the existing circumstances." <u>Id.</u>

Buckley contends that the Indiana Supreme Court's ruling in <u>French</u> gives him grounds to challenge the adequacy of his instructions on appeal, despite his failure to object at trial, under the fundamental error doctrine. Relying on <u>French</u>, Buckley asks us to place greater weight on the defendant's subjective belief regarding the necessity of the use of force than on the objective reasonableness of that belief. We disagree with Buckley's interpretation.

After its decision in <u>French</u>, our supreme court ruled in <u>Shaw v. State</u> that jury instructions containing similar language to the ones in <u>French</u> were adequate, even though the instructions did not specifically address the standpoint of the defendant component of review. 534 N.E12d 745, 747 (Ind. 1989).[3] Additionally, our own court has held that where a jury instruction provided that the standard to be used was the defendant's reasonable belief, the instruction was adequate to inform the jury of its duty to determine whether the defendant acted in self-defense based on how the situation appeared to him at the time of the incident. <u>See</u> <u>Davis v. State</u>, 691 N.E.2d 1285, 1289-90 (Ind. Ct. App. 1998).

---

[3] The supreme court later ruled on a similar self-defense instruction issue in <u>Brown v. State</u>, 738 N.E.2d 271 (Ind. 2000). There, the court held that instructions that specifically included a standpoint of the defendant component were adequate, without citing <u>Shaw</u>. <u>Id.</u> at 275.

The Indiana Supreme Court recently granted transfer in another self-defense instruction case, Washington v. State, 973 N.E.2d 91 (Ind. Ct. App. 2012), trans. granted, 980 N.E.2d 322 (Ind. 2012). Because that case is currently pending, Buckley states in his brief "it may be prudent for this Court to withhold judgment in Buckley's case until our [s]upreme [c]ourt issues an opinion in Washington." Appellant's Br. at 9. In the alternative, Buckley argues that the instruction in his case can be distinguished from Shaw, because the Shaw instruction included "in good faith" in describing the requisite reasonable belief for self-defense. Although the instruction in Buckley's case includes no such terminology, we recently held in Russell v. State that instructions that focused on the subjective state of mind of the defendant and failed to properly inform the jury of the requirement that the defendant's belief was objectively reasonable were a misstatement of the law. See 981 N.E.2d 1280, 1289-90 (Ind. Ct. App. 2013). Relying on our supreme court's decision in Shaw, we noted that instructions taken directly from the self-defense statute and advising the jury that a defendant's belief must be objectively reasonable are adequate to inform the jury of the elements required to prove self-defense. Id.

For all these reasons, we find no error in the trial court's final instructions, fundamental or otherwise. Absent a fundamental error, Buckley's appeal was waived when he failed to object to the instruction at trial. Therefore, we affirm Buckley's conviction.

Affirmed.

BAKER, J., and MAY, J., concur.