

**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MARK A. BATES**
Office of the Lake County Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEVIN CORTEZ BROWN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1212-CR-543 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-1005-MR-8

**September 24, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, appellant-defendant Kevin Cortez Brown admitted that he shot Vernale Givens three times and killed him. A jury rejected Brown's self-defense claim and found him guilty of murder. Brown subsequently admitted to being a habitual offender.

Brown now appeals, arguing that the trial court erred in instructing the jury because it 1) failed to give an instruction on reckless homicide as a lesser-included offense of murder and 2) gave four repetitious self-defense instructions. Brown also argues that the prosecutor engaged in misconduct by appealing to the jury's sympathy during closing argument.

Concluding that the trial court did not err in instructing the jury and that the prosecutor did not engage in misconduct, we affirm the judgment of the trial court.

FACTS

At approximately 7:30 a.m. on May 22, 2010, Brown shot Givens three times as he walked through a parking lot to his tire repair business in Gary. Givens died from the gunshot wounds, and the State charged Brown with murder and being a habitual offender. Brown chose to represent himself at trial with standby counsel. The evidence at trial revealed that Givens had a close-knit family and worked long hours at his business. He gave his cousin, Bremiah Snyder, a job to help Snyder start a new life after he was released from prison. Givens did not own or carry a gun. According to Givens's father, Givens "didn't believe in guns." Tr. p. 95.

2

While working at Givens's business, Snyder sold guns to Brown, who was working as an informant for the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Snyder was subsequently arrested, convicted of selling the guns, and sent to prison. While he was in prison, Snyder learned that Brown was an informant. According to Snyder, he never told his family about Brown.

Brown, on the other hand, testified that Snyder's family, including Givens, began harassing him for his part in sending Snyder to prison. Specifically, Brown testified that he received five harassing telephone calls from an unknown caller, which Brown construed as threats. Brown also testified that he was followed twice, and that Givens drove past Brown's grandmother's house one time.

The morning of the shooting, Brown noticed Givens behind him in his rear view mirror. Brown ran a red light to get away from Givens, and although Givens did not pursue Brown, Brown immediately drove to his mother-in-law's house to get a gun so that he could confront Givens. Brown then drove to Givens's tire repair business and approached Givens in the parking lot. Brown claims that when he asked Givens why Givens was harassing him, Givens yelled obscenities, lifted up his shirt to show a gun, and headed towards Brown. Brown explained that he immediately shot Givens in self-defense and fled the scene. No weapon was found on or around Givens.

At the final instruction conference, the trial court asked Brown if he wanted a lesser-included offense instruction on reckless homicide. Brown conferred with standby counsel, and then responded that he did not want the instruction. Also during the

3

conference, Brown objected that the self-defense instructions tendered by the State were covered by the trial court's instructions. The trial court gave four self-defense instructions over Brown's objection.

During rebuttal closing argument, the State argued as follows without objection:

> As you watch this [surveillance] video, you watch Vernale Givens, this man, this father, this husband, this son, this brother, take his last breaths. The last breaths of his life that he will ever take. Understand that you're watching this because of what the defendant did. He didn't just kill anyone, he killed a person who was mentoring people in the neighborhood. A person who was helping Bremiah Snyder get back on the right track. He took away all of the memories that his father will ever have of him. He didn't just kill Vernale Givens, he killed a family. And what he is asking you to do is to go back into the jury room and justify it.

Tr. p. 1003-04.

The jury convicted Brown of murder, and he pleaded guilty to being a habitual offender. The trial court sentenced him to sixty years for murder, enhanced by thirty years for being a habitual offender, for a total executed sentence of ninety years. Brown now appeals.

## DISCUSSION AND DECISION

### I. Jury Instructions

Brown argues that the trial court erred in instructing the jury. Specifically, he first contends that the trial court erred in failing to instruct the jury that it had the option of convicting him of reckless homicide as a lesser-included offense of murder. However, Brown did not request that the jury be so instructed. Rather, when asked by the trial court whether he wanted a lesser-included offense instruction, Brown conferred with

4

standby counsel and refused it. A claim of error based on a trial court's failure to give an instruction is waived if the defendant failed to tender that instruction. Russell v. State, 981 N.E.2d 1280, 1286 (Ind. Ct. App. 2013). In such a case, the defendant must establish that the failure to give the instruction constituted fundamental error. Id. A fundamental error is one that constitutes a blatant violation of basic principles, creating or potentially creating substantial harm, with a resulting denial of fundamental due process to the defendant. Id. Indiana courts have held that it is not fundamental error for a court not to sua sponte give a jury instruction on a lesser-included offense. Sarwacinski v. State, 564 N.E.2d 950, 951 (Ind. Ct. App. 1991) (citing Metcalf v. State, 451 N.E.2d 321, 326 (Ind. 1983)). Brown has failed to demonstrate the existence of fundamental error in the trial court's failure to sua sponte give a reckless homicide instruction to the jury. See Russell, 981 N.E.2d at 1286 (stating that Russell failed to demonstrate the existence of fundamental error in the trial court's failure to sua sponte give a voluntary manslaughter instruction to the jury).

Brown also argues that the trial court erred in giving Final Instruction No. 9 because it "was covered by Final Instruction No. 7 and should not have been given. In sum, the jury was given a total of four instructions on self-defense, of which three were virtually the same instruction given over and over again. (Final Instructions Nos. 6, 7, and 9 . . . .) This unduly highlighted Brown's claim and unfairly focused the jury's attention on this matter and the instructions should not have been given over Brown's objection." Amended Appellant's Br. p. 18.

First, our review of the final instructions reveals that Final Instruction No. 9 advised the jury that the State had the burden of proving beyond a reasonable doubt that Brown did not act in self-defense. This burden of proof requirement is not included in Final Instruction No. 7. Thus, Final Instruction No. 9 was not covered by Final Instruction No. 7.

Further, regarding Brown's argument that the repetitive nature of the instructions constituted fundamental error, we note that a certain amount of repetition is inherent in the nature of jury instructions. Gebhart v. State, 525 N.E.2d 603, 605 (Ind. 1988). The defendant's substantive rights are not violated by instructions that are to some extent repetitive. Id. Instructions become improper and reversal is required only when the instructions are so repetitive as to unduly emphasize a particular point or become argument by the court. Id. (citing Robbins v. Fugit, (1920), 189 Ind. 165, 126 N.E. 321 (giving fourteen or fifteen instructions on undue influence in will contest case was needless repetition amounting to argument by the court which may mislead the jury).

Here, the trial court gave four instructions on self-defense. Our review of the instructions reveals minimal repetition. We do not find Final Instructions Nos. 6, 7, 8 and 9 to be so repetitious as to violate Brown's substantial rights or to become an argument of the court on one particular phase of the case. See Coleman v. State, 465 N.E.2d 1130, 1133 (Ind. 1984) (stating that final instructions on felony murder were not so repetitious as to violate the substantial rights of the defendant or become argument of

the court on a particular phase of the case). The trial court did not err in instructing the jury.

## II. Prosecutorial Misconduct

Lastly, Brown argues that the prosecutor committed misconduct during her rebuttal closing argument. As discussed above, the prosecutor remarked that:

> As you watch this [surveillance] video, you watch Vernale Givens, this man, this father, this husband, this son, this brother, take his last breaths. The last breaths of his life that he will ever take. Understand that you're watching this because of what the defendant did. He didn't just kill anyone, he killed a person who was mentoring people in the neighborhood. A person who was helping Bremiah Snyder get back on the right track. He took away all of the memories that his father will ever have of him. He didn't just kill Vernale Givens, he killed a family. And what he is asking you to do is to go back into the jury room and justify it.

Tr. p. 1003-04. Specifically, Brown argues that this argument constituted misconduct because it urged the jury to convict Brown for a reason other than his guilt. According to Brown, the prosecutor improperly "appealed to the jury's sympathy for the victim's family because of the victim's role as a mentor, son and family member and the family's need for justice." Appellant's Br. p. 21.

When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. Hand v. State, 863 N.E.2d 386, 394 (Ind. Ct. App. 2007). If the party is not satisfied with the admonishment, then he or she should move for a mistrial. Id. Failure to request an admonishment or to move for a mistrial results in waiver. Id. Where a claim of prosecutorial misconduct has not been properly preserved, our standard of review is different from that of a properly preserved claim. Id.

7

Specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. Id. Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. Id. It is error that makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. Id.

Here, Brown neither requested an admonishment nor moved for a mistrial when the prosecutor made the comments that Brown now argues constituted prosecutorial misconduct. Brown has therefore waived this argument and must show that any misconduct resulted in fundamental error to succeed on appeal.

It is proper for a prosecutor to argue both law and fact during final argument and propound conclusions based upon his analysis of the evidence. Hollowell v. State, 707 N.E.2d 1014, 1024 (Ind. Ct. App. 1999). A prosecutor is entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable. Lopez v. State, 527 N.E.2d 1119, 1125 (Ind. 1988).

Here, during trial, Brown testified that Snyder's family, including Givens, harassed him for his part in sending Snyder to prison. Brown also claimed that when he drove to Givens's tire repair business and approached Given in the parking lot, Givens shouted obscenities, lifted up his shirt to show a gun, and headed towards Brown. During closing argument, the State pointed out that Givens was a close-knit family man who mentored people in the neighborhood. This argument was simply a permissible response

to Brown's allegations.  See Splunge v. State, 641 N.E.2d 628, 630 (Ind. 1994), superseded by rule on other grounds, (observing that the State's alleged improper appeal to the jury's sympathy was proper commentary upon argument of appellant's counsel). We find no error, fundamental or otherwise.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.