Douglas COVEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 30A01–0906–CR–311.

Court of Appeals of Indiana.

June 24, 2010.

Christopher T. Smith, Smith David & Blue, LLC, Greenfield, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy At-

torney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Douglas L. Covey (Covey), appeals his convictions for Count I, dealing in methamphetamine, as a Class A felony, Ind.Code § 35–48–4–1.1, Count II, possession of methamphetamine, as a Class B felony, I.C. § 35–48–4–6.1, Count III, possession of methamphetamine, as a Class B felony, I.C. § 35–48–4–6.1, Count IV possession of marijuana, as a Class A misdemeanor, I.C. § 35–48–4–11, and Count V, possession of paraphernalia, a Class A misdemeanor, I.C. § 35–48–4–8.3.

We affirm.

### ISSUES

Covey raises four issues on appeal, which we restate as:

(1) Whether the State presented sufficient evidence to prove beyond a reasonable doubt that Covey was in or within 1,000 feet of a family housing complex when he dealt methamphetamine;

(2) Whether the State disproved mitigating factors which could reduce the Class of felony for his convictions for dealing and possession of methamphetamine;

(3) Whether the trial court committed fundamental error by not instructing the jury on mitigating factors which could reduce the Class of felony for his convictions for dealing and possession of methamphetamine; and

(4) Whether the trial court committed reversible error by admitting the seized methamphetamine as evidence.

### FACTS AND PROCEDURAL HISTORY

On July 18, 2008, Lori Crosby (Crosby), a confidential informant working for the Hancock County Sheriff's Department, arranged to purchase methamphetamine from Covey. Covey agreed to meet Crosby at her apartment to make the sale. Crosby contacted Detective Tim Cicenas (Detective Cicenas) of the Hancock County Sheriff's Department and told him about the arrangements. Prior to the arranged sale, Detective Cicenas went with Detective Sergeant Brian Ellison (Detective Ellison) to set up audio and video recording devices in Crosby's apartment. They searched Crosby's apartment and gave her $100 cash that was traceable. After the Detectives had left, Covey came to Crosby's apartment and sold her one gram of methamphetamine for $60. Only the audio equipment captured the drug deal because the video equipment malfunctioned.

The Detectives and Crosby agreed that she would arrange for a second drug buy. On July 21, 2008, Crosby exchanged text messages with Covey, but they were unable to meet that day. The following day, Crosby text messaged Covey, and he responded that he would come to her apartment in twenty minutes. Crosby immediately contacted Detectives Cicenas and Ellison, who went to her apartment complex. Covey arrived at Crosby's apartment before the Detectives; however, Crosby did not answer when he came to her door, and Covey left. The Detectives saw him leaving on a motorcycle. Crosby text messaged Covey, told him that she had been in the shower and asked him to come back.

Covey returned and entered the building where Crosby's apartment was located. The Detectives went around to the backside of Crosby's apartment building in attempt to view Covey's actions. Covey went to the back door of the common area

and looked out the window. When he did, Covey made eye contact with Detective Ellison. Covey turned and made way to his motorcycle, and Detective Ellison ran around the side of the building, meeting up with Covey as he was mounting his motorcycle. Detective Ellison drew his pistol and ordered Covey to the ground. Detective Cicenas came around the building as well, placed Covey in handcuffs, and the Detectives searched Covey. They found marijuana and a glass pipe, but no methamphetamine.

The Detectives went in Crosby's apartment building, and spoke with Crosby who confirmed that Covey had not entered her apartment or made contact with her. The Detectives began searching the common area, and while they were doing so, Crosby noticed a small metal tin stuck behind a flower arrangement just outside of her apartment door. An evidence technician was called to the scene, seized the tin, and took it to the Greenfield Police Department's evidence processing room. Among other things, the tin contained two baggies of methamphetamine.

On July 24, 2008, the State filed an Information charging Covey with: Count I, dealing methamphetamine, as a Class A felony, I.C. § 35–48–4–1.1; Count II, possession of methamphetamine, as a Class B felony, I.C. § 35–48–4–6.1; Count III, possession of methamphetamine, as a Class B felony, I.C. § 35–48–4–6.1; Count IV, possession of paraphernalia, a Class A misdemeanor, I.C. § 35–48–4–8.3; Count V, possession of marijuana, as a Class A misdemeanor, I.C. § 35–48–4–11; and Count VI, possession of marijuana, as a Class D felony, I.C. § 35–48–4–11. On April 29, 2009, the trial court began a three day jury trial. During trial, Covey objected to the admission of the methamphetamine arguing that the manner in which the evidence had been kept created

a possibility of tampering. The trial court admitted the methamphetamine as evidence over Covey's objection. Prior to the close of the trial, the State dismissed Count VI, possession of marijuana as a Class D felony. After deliberating, the jury returned a verdict of guilty on all remaining charges, and the trial court entered its judgment of conviction thereon.

Covey now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

■ Covey contends that the State did not provide sufficient evidence to prove beyond a reasonable doubt that the place where he dealt or possessed methamphetamine was a "family housing complex." (Appellant's Br. p. 7). Therefore, Covey contends that his convictions for dealing methamphetamine and possession of methamphetamine should not have been elevated to higher felony levels because those acts occurred at a "family housing complex."

> Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. We consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. [ ] Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material evidence of the offense.

*Perez v. State*, 872 N.E.2d 208, 212–13 (Ind.Ct.App.2007), *trans. denied.*

Indiana Code section 35–48–4–1.1 provides that a person who knowingly or in-

tentionally delivers methamphetamine commits "dealing methamphetamine." The offense is a Class A felony if the person delivered the drug in, or within 1,000 feet of certain areas, including a "family housing complex." I.C. § 35–48–4–1.1(b). Likewise, possession of methamphetamine is a Class D felony, but is a Class B felony if the methamphetamine is possessed in, or within 1,000 feet of a "family housing complex." I.C. § 35–48–4–6.1(b). Indiana Code section 35–41–1–10.5 provides, in relevant part, that a "family housing complex" is a "building or series of buildings ... that is operated as an apartment complex." Therefore evidence that Crosby's apartment was located in an "apartment complex" would be sufficient evidence to prove that Covey delivered the methamphetamine or possessed methamphetamine in, or within 1,000 feet of a "family housing complex."

The term "apartment complex" is not defined by our criminal statutes. Covey contends that we should look to former Indiana Code section 6–1.1–20.6–1 for the definition of "apartment complex." At the time of Covey's offense, Indiana Code section 6–1.1–20.6–1 (2008) defined "apartment complex" as "real property consisting of at least five (5) units that are regularly used to rent or otherwise furnish residential accommodations for periods of thirty (30) days or more." This definition for "apartment complex" was located in the statutory scheme governing property taxation, not criminal law; therefore, the extent to which we can utilize this definition to aid our analysis of what is a "family housing complex" is somewhat doubtful since the subject matter of the statutory schemes varies greatly. *See Adkins v. Indiana Employment Sec. Div.*, 117 Ind. App. 132, 137, 70 N.E.2d 31, 33 (1946) ("In construing the meaning of certain words in a statute, the legislative definition of the same words in another act

(although not conclusive) is entitled to consideration in construing the same words when used in another statute *upon the same, or related, subject.*") (emphasis added).

On appeal, Covey hones his argument of insufficient evidence on Crosby's testimony regarding the usual lease terms, stating that "Crosby could only profess to know the terms of her own contractual arrangement." (Appellant's Br. p. 8). Ultimately, Covey contends that the State should have called an agent of the Greenfield Village Apartments "to ask the agent the number of units regularly rented or otherwise furnished for periods of thirty (30) days or more, together with questions about the operation of the business." (Appellant's Br. pp. 8–9).

We disagree with Covey's focus on the lease term clause within the definition for "apartment complex" as found in former Indiana Code section 6–1.1–20.6–1 when used to define a "family housing complex" for purposes of enhancing a dealing in methamphetamine or possession of methamphetamine charge. Indiana Code section 35–41–1–10.5 also provides that a "building or series of buildings ... that is operated as a hotel or motel (as described in IC 22–11–18–1)" is a "family housing complex." That a "hotel or motel" would qualify as a "family housing complex" makes it clear that our legislature was not focused on the length of lease terms to narrowly define what should qualify as a "family housing complex."

Nevertheless, we conclude that sufficient evidence supported the jury's conclusion that Crosby's apartment was in an "apartment complex," and therefore located in a "family housing complex." Crosby testified that her apartment was located in the "Greenfield Village Apartments." (Tr. p. 244). The name alone supports an infer-

ence that the place where Crosby lived was operated as an "apartment complex." Furthermore, Crosby testified that in her building, there are eight separate apartments, and there are "quite a few" buildings located in the complex. (Tr. p. 245). In fact, Crosby estimated that there were as many as 50 to 75 buildings in the complex. To the extent that the terms of lease may be relevant to a determination of whether the Greenfield Village Apartments is operated as an "apartment complex," Crosby testified that tenants "usually ... have to sign either a six (6) month or one (1) year contract." (Tr. p. 245). As a tenant, Crosby would have negotiated a lease and may be competent to testify as to her understanding of the usual terms. Covey had opportunity to question Crosby on her basis for that testimony but did not. In sum, we conclude that the State presented sufficient evidence to prove that Crosby lived in an "apartment complex," and, thus, Covey delivered the methamphetamine and possessed the methamphetamine in, or within 1,000 feet of a "family housing complex."

## II. Defense to the Elevation of Covey's Conviction

■ Covey contends that the State did not present sufficient evidence to sustain his conviction for dealing methamphetamine as a Class A felony "because the State failed to rebut his defense that he was only briefly within the protected zone of the family housing complex." (Appellant's Br. p. 9). The State responds that this defense was never raised by Covey, and even if it had been raised, it was rebutted by the facts presented in the State's case-in-chief.

■ Indiana Code section 35–48–4–16(b), provides in relevant part, that it is a defense to delivery of methamphetamine or possession of methamphetamine in or within 1,000 feet of a family housing complex that the person was "briefly" in, or within 1,000 feet of the family housing complex, and "no person under eighteen (18) years of age at least three (3) years junior to the person was in ... or within one thousand (1,000) feet of the ... family housing complex." The defense in I.C. § 35–48–4–16(b) is not an affirmative defense, but rather mitigating factors that reduce culpability, "and therefore the defendant does not have the burden of proof but 'only the burden of placing the issue in question where the State's evidence has not done so.'" *Harrison v. State*, 901 N.E.2d 635, 642 (Ind.Ct.App.2009), *trans. denied* (quoting *Adkins v. State*, 887 N.E.2d 934, 938 (Ind.2008)).

> Once at issue, the State must rebut the defense by proving beyond a reasonable doubt either that the defendant was within 1000 feet of a [family housing complex] more than "briefly" *or* persons under the age of eighteen at least three years junior to the defendant were within 1000 feet of the [family housing complex] (because both factors are required to effectuate the mitigation).

*Id.* (quoting I.C. § 35–48–4–16(b)) (emphasis in original).

On appeal, Covey directs our attention to some of the evidence presented by the State and the lack of evidence to contend that the State did not disprove the mitigating factors of his brief presence and no children present. However, we fail to find where Covey placed those mitigating factors at issue. Not once during Covey's closing argument did he argue that he had only been briefly at the Greenfield Village Apartments and that children may not have been present. Furthermore, nowhere in the final jury instructions did the trial court instruct the jury on the statutory mitigating factors of being present within a family housing complex only briefly and the absence of children at that time.

Covey admits on appeal that he did not tender such an instruction to the trial court or object to the absence of such an instruction. Therefore, we conclude that Covey did not place the mitigating factors at issue and the State was not required to rebut those factors with evidence beyond a reasonable doubt.

### III. *Failure to Instruct*

■ In a related argument, Covey contends that the trial court committed fundamental error by failing to instruct the jury on the mitigating factors of Indiana Code section 35–48–4–16(b). Covey argues that the trial court's failure to instruct the jury on the mitigating factors constitutes fundamental error because it resulted in "the deprivation of his right to argue to the jury, and to have the jury so find, that he was guilty" of lesser felonies. (Appellant's App. p. 13).

■■ Generally, where a defendant has failed to object to a jury instruction or failed to tender a jury instruction, the defendant's claim of error on appeal is waived; however, we will consider a defendant's claim that the error constituted fundamental error. *Staley v. State*, 895 N.E.2d 1245, 1248 (Ind.Ct.App.2008), *trans. denied.* "The fundamental error doctrine is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.*

However, as the *Harrison* decision points out, the burden of placing the mitigating factors of Indiana Code section 35–48–4–16(b) at issue is upon the defendant. *Harrison*, 901 N.E.2d at 641. As we have stated above, Covey did not argue those mitigating factors to the jury. Thus, Covey is essentially asking that we shift the burden, or at least part of the burden, to place the mitigating factors at issue upon the trial court by requiring the trial court to instruct on those mitigating factors where the defendant has neither argued they apply or requested such a jury instruction. We refuse to do so. Because Covey never placed the mitigating factors of Indiana Code section 35–48–4–16(b) at issue, we conclude that the trial court did not commit fundamental error by not instructing the jury on those mitigating factors.

### IV. *Admission of the Methamphetamine*

■ Covey contends that the methamphetamine found in the metal tin just outside Crosby's apartment door should not have been admitted as evidence. Specifically, he argues that because the methamphetamine was kept by police officers in the evidence processing room in an unsealed container for about two weeks, the State was unable to "assure that the evidence was not tampered with." (Appellant's Br. p. 17). He contends that the manner in which the evidence was kept amounts to a failure to establish a chain of custody.

■ We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Embry v. State*, 923 N.E.2d 1, 7 (Ind.Ct.App.2010), *trans. denied.* When admitting physical evidence at trial, "the State must provide reasonable assurances that [the] exhibit, which has passed through various hands, has remained undisturbed." *Doty v. State*, 730 N.E.2d 175, 178 (Ind.Ct.App.2000).

> Because the State need not establish a perfect chain of custody, slight gaps go to weight, not the admissibility, of the evidence. There is a presumption of regularity in the handling of exhibits by public officers. Thus, merely raising the possibility of tampering is insufficient to make a successful challenge to the chain of custody.

*Filice v. State*, 886 N.E.2d 24, 34 (Ind.Ct. App.2008), *trans. denied* (punctuation and citations omitted).

At trial, the State called all of the police officers who had access to the methamphetamine during the approximately two weeks it was stored in the evidence processing room in an unsealed container. The State specifically asked each officer whether they had tampered with the evidence, and each responded that they had not. Moreover, Covey's argument to the jury at trial contradicts his argument now on appeal:

> [A]nother reason this case took so long is that [the State] went back to show the chain of custody on each and every little bit of time it got picked up until the time it got to the State Police and back. I never insinuated that these guys tainted the evidence, that they did something. I never said that they sprinkled their DNA on it. I had one person in mind, when you talk about tainted evidence, it's the C.I., the snitch. I never thought the cops did it. I know these guys. This is a small town. They're not gonna do that.

(Tr. p. 527). By making this argument to the jury, Covey conceded that the State had established a chain of custody, and that he did not suspect any tampering on the part of police officers. Therefore, we conclude that the trial court did not abuse its discretion by admitting the methamphetamine as evidence.

### CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence to prove that Covey delivered and possessed methamphetamine in, or within 1,000 feet of a family housing complex, the trial court did not commit fundamental error by not instructing the jury on mitigating facts which Covey had not placed in issue, and the trial court did not abuse its discretion by admitting the methamphetamine as evidence.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.