## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 06 2017, 8:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Hilary Bowe Ricks
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brian Walton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 6, 2017

Court of Appeals Case No.
49A05-1601-CR-64

Appeal from the Marion Superior Court

The Honorable Shatrese M. Flowers, Judge

Trial Court Cause No.
49G20-1303-FA-18354

**Crone, Judge.**

# Case Summary

Brian Walton appeals his convictions and sentence for class A felony dealing in cocaine and class B felony dealing in narcotics. He challenges the trial court's jury instruction defining possession as well as its refusal to give his "mere presence" instruction. He also challenges the trial court's treatment of certain mitigators and aggravators during sentencing and asserts that his thirty-five-year sentence is inappropriate in light of the nature of the offenses and his character. We affirm.

# Facts and Procedural History

The facts most favorable to the verdict are as follows. On March 18, 2013, Indianapolis Metropolitan Police Department Detective Steven Brinker worked undercover with a confidential informant ("CI") to conduct a controlled drug buy. The dealer with whom they had originally planned their deal arrived at the rendezvous point and told the detective and the CI that he had run out of drugs and would have to wait to be resupplied. Shortly thereafter, a warning signal came on in the detective's vehicle indicating a need to add motor oil. As the detective and the CI looked under the hood to address the problem, a gold van approached and parked in front of them. The CI recognized one of the men in the gold van, who exited and walked down the street. The CI spoke with a person inside the gold van, and Detective Brinker approached. The detective noted that the driver, identified as Walton, was the only person in the gold van. He also observed a black sock in Walton's lap containing what

appeared to be a large quantity of crack cocaine. Another man, identified as Tristan Spralls, stood outside the van behind Detective Brinker as the detective and Walton conversed. The detective handed Walton a marked twenty-dollar bill, in exchange for which Walton handed him a packet containing a substance later determined to be heroin.

[3]    Detective Brinker returned to his vehicle and added motor oil. Immediately thereafter, a third man approached him. The man, identified as Brandon Walker, gave the detective twenty dollars' worth of crack cocaine in exchange for forty dollars in marked cash. The two men returned to the gold van to obtain some more crack cocaine, for which the detective had already paid. Detective Brinker noticed that Walton had moved to the passenger's seat and was still holding the black sock. Walton broke off a piece of the substance in the sock and handed it to Spralls, who was now sitting in the driver's seat. Spralls immediately handed Detective Brinker the substance, later determined to be crack cocaine.

[4]    The gold van left, and Detective Brinker radioed other officers nearby to conduct a stop and arrest. The officers searched for the gold van and found it parked near an abandoned house. Police apprehended Walton, Spralls, and Walker nearby. A search of the air vents in the gold van produced the black sock, which contained one packet of 1.8067 grams of heroin, one packet of 84.99 grams of cocaine, and another packet containing 58.01 grams of cocaine. Officers also recovered the marked bills and a total of $3000 cash.

[5] The State charged Walton with class A felony dealing in cocaine; class C felony possession of cocaine; class B felony dealing in narcotics (heroin); class D felony possession of heroin; class B felony dealing in cocaine; class B felony conspiracy to deal cocaine; and class B felony conspiracy to deal cocaine. During his jury trial, the trial court held a conference to discuss jury instructions. Walton tendered an instruction on "mere presence," which the trial court refused. The jury acquitted Walton of class B felony conspiracy to deal cocaine and convicted him on the six remaining counts. The trial court merged the convictions and entered judgment on class A felony dealing in cocaine and class B felony dealing in heroin. The trial court sentenced Walton to thirty-five and fifteen years, to be served concurrently.

[6] Walton now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – The trial court did not commit reversible error in refusing Walton's "mere presence" instruction.

[7] Walton contends that the trial court erred in refusing his tendered instruction on "mere presence." The trial court has broad discretion in instructing the jury, and as a result, we review the trial court's decision to give or refuse a party's tendered instruction for an abuse of discretion. *Kane v. State*, 976 N.E.2d 1228, 1231 (Ind. 2012). In conducting our review, we consider "(1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the

substance of the instruction was covered by other instructions that were given." *Id*. at 1230-31. "The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Isom v. State*, 31 N.E.3d 469, 484 (Ind. 2015) (internal quotation marks omitted), *cert. denied* (2016).

[8] Walton's tendered instruction on mere presence reads, "You are hereby instructed that it is the law of the State of Indiana that the mere presence at a crime scene alone is not sufficient to support guilt beyond a reasonable doubt." Appellant's App. at 115. The State also submitted a proposed instruction on mere presence, noting its opinion that a mere presence instruction was not necessary but reasoning that if the trial court found it appropriate to give one, it should be a longer, more complete definition. The trial court cited Detective Brinker's testimony concerning a hand-to-hand exchange from Walton and refused both parties' tendered instructions. Tr. at 272.

[9] We agree with the trial court that the evidence did not support a mere presence instruction. Detective Brinker testified that he purchased heroin directly from Walton in exchange for the marked twenty-dollar bill. He observed a black sock in Walton's lap at the time of the transaction. Later, when he returned to the van to retrieve the second half of the crack cocaine, he reported that Walton still had the black sock containing what appeared to be crack cocaine and that he saw Walton break off a piece of the crack and hand it to Spralls, who in turn handed it to him. The evidence showed that Walton was not merely present

but instead was an active participant in the heroin and crack cocaine deals. The trial court acted within its discretion when it refused Walton's tendered instruction on mere presence.

## Section 2 – The trial court did not commit fundamental error in giving the State's instruction defining possession.

In a related argument, Walton challenges the trial court's instruction defining possession. As the parties correctly observe, Walton did not object to the possession instruction at trial. *See Id.* at 268 (Walton specifically stated, "No, no objection," concerning the instruction). As such, he has waived the issue for review absent a showing of fundamental error. *See Covey v. State*, 929 N.E.2d 813, 819 (Ind. Ct. App. 2010) (defendant's failure to object to jury instruction results in waiver on appeal, except where error constituted fundamental error). Fundamental error is an extremely narrow exception to the waiver rule, whereby the defendant must demonstrate that the alleged error is so prejudicial to his rights as to "make a fair trial impossible." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014). The fundamental error doctrine "applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Covey*, 929 N.E.2d at 819.

"Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law of the case." *Flake v. State*, 767 N.E.2d 1004, 1007 (Ind. Ct. App. 2002). "Instructions that unnecessarily

emphasize one particular evidentiary fact, witness, or phase of the case have long been disapproved." *Ludy v. State*, 784 N.E.2d 459, 461 (Ind. 2003).

[12] Final instruction No. 3 reads,

> The word "possess" means to own or to exert control over. The word "possession" can take on several different, but related, meanings.
>
> There are two kinds of "possession" – actual possession and constructive possession. A person who knowingly has direct physical control of a thing at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise control over a thing, either directly or through another person or persons, is then in constructive possession of it.
>
> Possession may be sole or joint. If one person alone has actual or constructive possession of a thing, then possession is sole. If two or more persons share actual or constructive possession of a thing, then possession is joint. Possession may be actual or constructive, and either alone or jointly with others.
>
> To establish constructive possession the State must prove a person had both the capability and the intent to maintain dominion and control over the contraband. The capability requirement means the State must show a person was able to reduce the contraband to his personal possession. The intent requirement means the State must show a person had knowledge of the contraband's presence. Knowledge may be inferred from a person's exclusive dominion and control over the premises containing the contraband, or from additional circumstances tending to show a person's knowledge of the presence of the contraband. Examples of such circumstances include but are not

limited to:

1) incriminating statements by a person;

2) attempted flight or furtive gestures;

3) location of substances like drugs in settings that suggest manufacturing;

4) proximity of the contraband to a person;

5) contraband within a person's plain view; and

6) mingling of the contraband with items owned by a person.

Appellant's App. at 122.

[13]     In *Gray v. State*, our supreme court explained the requirement of possession, both actual and constructive.

> A person actually possesses contraband when she has direct physical control over it. But a conviction for a possessory offense does not depend on catching a defendant red-handed. When the State cannot show actual possession, a conviction for possessing contraband may rest instead on proof of constructive possession. A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it. A trier of fact may infer that a defendant had the capability to maintain dominion and control over contraband from the simple fact that the defendant had a possessory interest in the premises on which an officer found the item. We allow this inference even when that possessory interest is not exclusive. A trier of fact may likewise infer that a defendant had the intent to maintain dominion and control over contraband from the defendant's

possessory interest in the premises, even when that possessory interest is not exclusive. When that possessory interest is not exclusive, however, the State must support this second inference with additional circumstances pointing to the defendant's knowledge of the presence and the nature of the item.

957 N.E.2d 171, 174-75 (Ind. 2011) (citations omitted).[1]

[14] Here, the evidence shows that Walton had actual possession of the cocaine and heroin. Detective Brinker received the heroin in a hand-to-hand exchange from Walton. As for the cocaine, the detective twice observed Walton with the black sock that appeared to contain crack cocaine, and he observed Walton break off a piece of the crack rock and hand it to Spralls, who handed it to the detective. Subsequent testing showed that the sock contained 143 grams of crack cocaine. We find no error, fundamental or otherwise, in the trial court's giving of Final Instruction No. 3.

## Section 3 – The trial court acted within its discretion in its treatment of mitigating and aggravating factors during sentencing.

[15] Walton challenges the trial court's treatment of mitigating and aggravating factors during sentencing. Sentencing decisions rest within the sound discretion of the trial court, and as long as a sentence is within the statutory range, it is

---

[1] As best we can discern, Walton's complaint is that the jury instruction is confusing concerning the mens rea element of constructive possession. We find that his argument lacks cogency and therefore is waived pursuant to Indiana Appellate Rule 46(A)(8). *Elvers v. State*, 22 N.E.3d 824, 833 n.4 (Ind. Ct. App. 2014). Even so, the record clearly supports Walton's *actual* possession of the contraband.

subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Sloan v. State*, 16 N.E.3d 1018, 1026 (Ind. Ct. App. 2014). A trial court may abuse its discretion if the sentencing statement omits mitigating factors that are clearly supported by the record and advanced for consideration or identifies aggravating factors that are not supported by the record. *Anglemyer*, 868 N.E.2d at 490-91.

[16]    Walton first claims that the trial court abused its discretion by omitting certain mitigators advanced for consideration. The trial court is not obligated to accept the defendant's argument concerning what constitutes a mitigating factor. *Healey v. State*, 969 N.E.2d 607, 616 (Ind. Ct. App. 2012), *trans. denied*. Moreover, if the trial court does not find the existence of a mitigator after it has been argued by counsel, the court is not obligated to explain why it found the circumstance not to be mitigating. *Anglemyer*, 868 N.E.2d at 493.

[17]    In particular, Walton cites as an overlooked mitigator the hardship that a lengthy sentence would place on his children. The trial court is not required to find that a defendant's incarceration would result in undue hardship on his dependents. *Benefield v. State*, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009), *trans. denied*. "Many persons convicted of crimes have dependents and, absent special circumstances showing that the hardship to them is 'undue,' a trial court does not abuse its discretion by not finding this to be a mitigating factor." *Id*. At

sentencing, Walton introduced testimony from his mother and girlfriend extolling his loving and active participation not only with his own children but also with his girlfriend's children. The trial court heard the evidence and simply did not find this factor to be mitigating. We find no abuse of discretion here. While Walton's mother referenced some behavior problems that she had observed in his five-year-old son since his incarceration, the evidence did not reflect special circumstances indicative of undue hardship.

[18] With respect to Walton's other proffered mitigators, we first note that the trial court did take into account the rehabilitative programs that he completed in jail. As for his expressions of remorse, Walton never expressed remorse for committing the offenses; rather, he said that he was sorry for associating with his cohorts. *See Price v. State*, 765 N.E.2d 1245, 1253 (Ind. 2002) (no abuse of discretion where trial court did not find remorse as mitigator where defendant's statements of remorse fell "well short of a full acceptance of responsibility"). The trial court was in the best position to evaluate Walton's expressions, and we will not reassess them. We find no abuse of discretion in the trial court's treatment of mitigating factors.

[19] Walton also takes issue with the trial court's treatment of aggravating factors. The trial court identified as aggravators Walton's juvenile record (including two true findings, one for an offense that would have been a felony if committed by an adult); adult criminal record (including nine convictions, four of which were felonies); recent parole violation; three probation revocations; the nature and circumstances of the current offenses; and his arrest for another drug offense

while out on bond in the present cause. He claims that the trial court erred in counting his juvenile and adult criminal records as two separate aggravators. He also takes umbrage with the court's identification of the nature and circumstances of the offenses, which he claims was not sufficiently detailed to constitute a valid aggravator. We address the nature and circumstances of the offenses as part of our Indiana Appellate Rule 7(B) analysis below.

[20] As for the trial court's separate identification of Walton's juvenile and adult criminal records, the trial court's consideration of aggravators and mitigators is not a mathematics equation in which the court simply subtracts the lesser number from the greater; rather, the trial court identifies aggravators supported by the record, and we conduct our review without reweighing the properly identified factors. *See Anglemyer*, 868 N.E.2d at 491 ("The relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse [of discretion]."). The record supports the identified aggravators, and we decline Walton's invitations to assign a different weight to them. We find no abuse of discretion here.

## Section 4 – Walton has failed to meet his burden of establishing that his sentence is inappropriate in light of the nature of his offenses and his character.

[21] Finally, Walton asks that we review and revise his sentence pursuant to Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the

character of the offender." When a defendant requests appellate review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, we may consider all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). We do not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is "inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007). A defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Anglemyer*, 868 N.E.2d at 490.

[22] In considering the nature of Walton's offenses, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Id*. at 494. When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011). The jury found Walton guilty of four felony dealing offenses and two felony possession offenses. The trial court merged his convictions and entered judgment on one count each of class A and class B felony dealing and

sentenced him to concurrent thirty-five- and fifteen-year terms. A class A felony carries a sentencing range of twenty to fifty years, with a thirty-year advisory term. Ind. Code § 35-50-2-4 (2013). A class B felony carries a sentencing range of six to twenty years, with a ten-year advisory term. Ind. Code § 35-50-2-5 (2013).

[23] Walton correctly observes that there are no exceptional circumstances surrounding his offenses that would militate toward a lengthier sentence. Nevertheless, we note that the black sock that Walton held and/or had in his lap during the drug transactions was found to contain 143 grams of crack cocaine, a quantity exponentially larger than the three-gram threshold for his class A felony dealing offense. Ind. Code § 35-48-4-1(b) (2013). We also note the number and seriousness of the offenses of which he was found guilty (one class A felony, three class B felonies, one class C felony, and one class D felony) and observe that his aggregate thirty-five-year term is well below his maximum sentence exposure.

[24] As for Walton's character, we conduct our review by engaging in a broad consideration of his qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571. On the positive side, he has completed numerous courses during his incarceration aimed at self-improvement and addressing his drug abuse issues. He appears to be an

attentive father, at least as to some of his children.[2]  On the negative side, his most notable quality is his sustained disrespect for the law, as evidenced by a criminal record that spans two decades.  At age thirteen, he had a true finding for shoplifting, class D felony theft if committed by an adult.  He later had true findings for criminal trespass and curfew violation.  Entering into adulthood, he was convicted of driving while suspended, resisting law enforcement, and class D felony possession of a controlled substance.  He followed up with convictions for felony theft, felony cocaine possession, and felony auto theft, all the while continuing to drive on a suspended license.  He has had his probation revoked three times, and while he was out on bail in the instant cause, he was arrested at a local motel and charged with multiple dealing and possession offenses, including four felonies and a misdemeanor.  He is currently unemployed, and though he stated that he previously supported himself by flipping houses, he also reported that he has never filed a tax return.  Appellant's App. at 158.

[25]  Simply put, Walton is a career criminal who has neither learned from his mistakes nor responded favorably to lenient treatment.  He has failed to meet his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.  Accordingly, we affirm.

---

[2]  The testimony concerning Walton's attentive parenting appears mainly to concern the two children that he fathered with his current girlfriend and the girlfriend's own children.  The record shows that he has fathered seven additional children with six different mothers, and that he occasionally sees his other children, mostly when those children stay at his mother's home.  The record shows that he is in arrears on child support. Appellant's App. at 158.

[26]     Affirmed.

Kirsch, J., and May, J., concur.