## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 20 2018, 10:15 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald C. Swanson, Jr.
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jerry L. Williamson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | April 20, 2018<br><br>Court of Appeals Case No.<br>02A03-1711-CR-2782<br><br>Appeal from the Allen Superior Court<br><br>The Honorable John F. Surbeck, Jr., Judge<br><br>Trial Court Cause No.<br>02D04-1608-FA-4 |

**Crone, Judge.**

# Case Summary

A jury convicted Jerry L. Williamson of five counts of class A felony child molesting and three counts of class C felony child molesting. He now appeals, raising as fundamental error the trial court's pretrial exclusion of evidence pursuant to the Rape Shield Rule. Finding that he waived any argument in this regard by failing to make an offer of proof at trial, we affirm.

# Facts and Procedural History

Williamson and Charlotte McMahon ("Mother") are the biological parents of D.W. ("Son"), who was born in 2002 and lived with Mother. At age three, Son was diagnosed with autism. At age four, he began having regular visits with Williamson every other weekend and for one week each summer. At age eleven, he functioned at the age of a four- or five-year-old.

In October 2014, several days after Son had been with Williamson for a weekend, he was talking with his half brother, and Mother overheard him use the words "butts" and "wieners." Tr. Vol. 2 at 49. When Mother asked the boys what they were discussing, Son said, "my daddy tickled my butt with his wiener," "my daddy tickled my mouth with his wiener," and "my daddy tickled my wiener with his mouth." *Id*. Mother immediately phoned Williamson, who denied the accusations and said, "[P]lease do not report this, please do not call the police or Child Protective Services ["CPS"] because I will go away for the rest of my life and never see my child again." *Id*. at 50. Mother reported the matter to police and CPS. A forensic specialist interviewed Son at a local

children's center, where he made the same accusations that he had verbalized to Mother. He also reported that something came out of his daddy's wiener and said that he felt like he was going to puke when his daddy's wiener was in his mouth. He later was interviewed by a sexual assault nurse, who reported that he told her, "dad hurt it," "hurt it with daddy's weiner [sic]," while pointing to his anus; "it hurts, red stuff on toilet paper." State's Ex. 6. He told the nurse that Williamson "put my weiner [sic] in his butt" and used the terms "tickle, tickle, tickle." *Id*. He tried to put his finger in the nurse's mouth and said, "oh, oh, oh, daddy says, tickle, tickle, tickle," "Put your mouth in his weiner [sic]." *Id*. He also said, "put weiner [sic] in mouth," "stuff went in mouth," "made mouth sick," and then "he said 'thank you,'" "love you.'" *Id*. The nurse asked Son when this had happened, and he responded, "At nighttime at dad's, lots of times." *Id*.

[4] A few months after Son made his disclosures concerning Williamson, two other boys, T.D. and A.D., came forward and alleged that Williamson had sexually molested them as well. These adolescent brothers were relatives of Williamson's ex-wife and had spent a significant amount of time at Williamson's home between 2011 and 2014. The two boys generally stayed with Williamson on alternate weekends, with A.D.'s weekends occasionally coinciding with Son's weekends. T.D., the older of the brothers, disclosed that when he was ten years old, Williamson began rubbing his penis over his pants while he was trying to play video games and then progressed to rubbing his bare

penis. He also reported that on more than one occasion, Williamson had forced him to suck his penis and had put his mouth on T.D.'s penis.

[5] A.D. was eight years old when he began visiting Williamson. Over the next couple years, Williamson started molesting him. A.D. recounted a time when he was awakened by Williamson, who was putting his mouth on A.D.'s penis. Another time, Williamson tried to insert his penis into A.D.'s mouth and then masturbated until "white stuff came out." Tr. Vol. 2 at 238-39. A.D. disclosed that he had been forced to perform and submit to oral sex with Williamson numerous times. He also reported that shortly before Son made his disclosures about Williamson, he saw Williamson insert his penis into Son's mouth and saw Son spit out the "white stuff." *Id.* at 240. A.D. and T.D. ceased visiting Williamson after they heard about Son's disclosures. A few months later, T.D. reported that Williamson had molested him, and the boys' stepmother questioned A.D., who said that he too had been molested by Williamson.

[6] In August 2016, the State charged Williamson with eleven counts of child molesting, five as class A felonies, two as level 1 felonies, three as class C felonies, and one as a level 4 felony. The State amended the information to dismiss the two level 1 felony counts as well as the level 4 felony count. Nine months later, Williamson filed a belated motion of intent to offer evidence

under Indiana Evidence Rule 412.[1] The trial court conducted a hearing, and the State subpoenaed witnesses for both parties. At the hearing, defense counsel asserted that A.D. and T.D. had previously made sexual assault allegations against a different perpetrator and that Son had merely overheard the brothers recounting those assaults and co-opted the details as his own. With respect to the counts involving A.D. and T.D., Williamson indicated that his defense strategy was to show that though the boys might have been molested, it was by a person other than him. The defense opted not to call any of the subpoenaed witnesses.

[7] In response to Williamson's arguments, the State indicated that A.D. had not made any allegations against a person other than Williamson and that T.D. had testified at his deposition that he had never discussed the other perpetrator with A.D. or Son and that he and Son were rarely ever at Williamson's home on the same weekends. Pretrial Tr. at 8. The State also indicated that it was prepared to offer testimony from an autism doctor stating that it is "very unlikely that [Son] could overhear a conversation and internalize it and be able to repeat it

---

[1] In a criminal proceeding involving alleged sexual misconduct, Indiana Evidence Rule 412, the Rape Shield Rule, prohibits the admission of evidence offered to prove that a victim "engaged in other sexual behavior." Ind. Evidence Rule 412(a)(1). The purpose of the rule is "to prevent the victim of a sexual assault from being put on trial … and, importantly, to remove obstacles to reporting sex crimes." *Johnson v. State*, 6 N.E.3d 491, 498 (Ind. Ct. App. 2014) (citations and internal quotation marks omitted). Rule 412(b)(1)(A) allows the court to admit "evidence of specific instances of a victim's or witness's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence." Rule 412(c)(1) requires the party intending to offer the evidence to file a motion at least ten days before trial specifically describing the evidence it seeks to introduce and the purpose for which it will be offered. Indiana Code Section 35-37-4-4, known as the Rape Shield Statute, is substantially similar to Indiana Evidence Rule 412. Williamson offered the evidence only under Rule 412.

and show actions the way he did.  That is outside the scope of what he's capable of with his autism." *Id.*

[8] The trial court took the matter under advisement and denied Williamson's Rule 412 motion.  During his October 2017 jury trial, Williamson did not renew his motion or make an offer of proof.  The jury found Williamson guilty as charged, and the trial court sentenced him to an aggregate 140-year term. Williamson now appeals.  Additional facts will be provided as necessary.

## Discussion and Decision

[9] Williamson maintains that the trial court erred in denying his pretrial motion to introduce evidence under the Rape Shield Rule.  The State claims, and Williamson admits, that he failed to renew his motion and make an offer of proof during his jury trial.  To preserve an error for appellate review, a party must do more than challenge the pretrial ruling; rather, "the evidence must be offered at trial to give the trial court an opportunity to rule on its admissibility at that time."  *Miller v. State*, 716 N.E.2d 367, 370 (Ind. 1999) (quoting *Tyra v. State*, 506 N.E.2d 1100, 1102-03 (Ind. 1987)); *see also* Ind. Evidence Rule 103(a)(2) (requiring that party seeking to preserve claim of error concerning excluded evidence must inform the court of its substance by an offer of proof). This requirement specifically applies to exclusions under the Rape Shield Rule, "even though Rule 412 … include[s] specific provisions for ruling on the admissibility of the proposed evidence after pretrial notice and hearing."  *Miller*,

716 N.E.2d at 370. Having failed to renew his pretrial motion or make an offer of proof at trial, Williamson failed to preserve the alleged error for review.

[10] Nevertheless, Williamson claims that he is entitled to relief under the doctrine of fundamental error. "[A] claim waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred." *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010) (citation omitted). Fundamental error is an extremely narrow exception to the waiver rule, whereby the defendant must demonstrate that the alleged error is so prejudicial to his rights as to "make a fair trial impossible." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014). The fundamental error doctrine "applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Covey v. State*, 929 N.E.2d 813, 819 (Ind. Ct. App. 2010).

> 'A finding of fundamental error essentially means that the trial judge erred ... by not acting when he or she should have....' Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant *trial errors* that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error.

*Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014) (citation omitted) (emphasis added).

[11]     Williamson is not challenging the trial court's admission of some allegedly prejudicial evidence to which he failed to object. Instead, he seeks to use fundamental error to correct his own failure to offer evidence at his trial. Fundamental error is not a safety valve to rescue unasserted or unrenewed claims. Rather, it corrects egregious, prejudicial errors made at trial, by the trial court. No such error occurred here. Williamson never broached the subject of the Rule 412 evidence, and it was not the trial court's responsibility to ask whether he wished to further pursue the introduction of the evidence ruled inadmissible at the pretrial hearing. In short, Williamson's procedural default cannot be rescued by the fundamental error doctrine. Consequently, we affirm.

[12]     Affirmed.

Bailey, J., and Brown, J., concur.